[Crim. No. 20314. June 16, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
ELBERT SIDNEY ROGERS, Defendant and Appellant.

544

## COUNSEL

Roblin J. Williamson, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

Stanley M. Roden, District Attorney (Santa Barbara), Craig A. Smith and Patrick J. McKinley, Deputy District Attorneys, as Amici Curaie on behalf of Plaintiff and Respondent.

## OPINION

**CLARK, J.**—Defendant appeals from judgment of conviction of 3 counts of lewd and lascivious acts upon children under the age of 14 years (Pen. Code, § 288) and of 3 counts of oral copulation of children under the age of 14 years and more than 10 years younger than himself (Pen. Code, § 288a). Defendant's principal attack upon the judgment is that it is based on evidence obtained as a result of an unreasonable search of the van in which he was arrested. The judgment is affirmed.

The challenged search occurred in Lakewood Township, New Jersey. Adelbert Szatmary, a police officer in that community, was informed over his patrol car radio that a white male, 35 to 40 years old, driving a light brown van with Georgia license plates, had attempted to perform a sex act on 2 young males at the Lakewood Shopping Plaza. When Officer Szatmary went to the plaza he was unable to locate the reported victims or the original informant. His initial search of the surrounding area for the van was also unsuccessful, but six hours later, at 11:30 p.m., Officer Szatmary observed a light brown van with Georgia license plates in a municipal parking lot a mile from the plaza.

Defendant responded to Officer Szatmary's knock on the van door. He fit the description of the reported child molester. Because the interior of the van was dark the officer turned his flashlight on defendant. In the light Officer Szatmary observed on the floor of the van three loose photographs and a bag of other photographs. The three loose photo-

graphs and the top photograph visible in the open bag were Polaroid snapshots depicting naked boys, apparently between 10 to 12 years of age, with erect penises. Because the background in the photographs matched the highly distinctive decor of the van Officer Szatmary concluded the pictures had been taken in the van and might depict the victims of the reported assaults in the plaza. Officer Szatmary accordingly asked defendant if he had been in the plaza earlier that day. Defendant replied he did not know where the plaza was but he had been in a shopping center with a Grant's store. Officer Szatmary knew the only Grant's store in the township was at the plaza. The officer then asked defendant if he had any contact with young boys at the Grant's store; defendant replied he might have talked to some young boys there. Officer Szatmary thereupon arrested defendant for contributing to the delinquency of a minor, debauchery, and exposing obscene materials to minors.

Asking permission to put on his trousers, defendant retreated inside the van. Officer Szatmary then, for the first time, entered the van, to assure himself defendant did not have access to a weapon. Inside the van the officer observed, in plain sight, pornographic magazines with photographs of naked young boys, pornographic material (dildoes, etc.), and a Polaroid camera. Seizing the Polaroid snapshots he had observed earlier, the officer had defendant leave the van and frisked him. When asked for his permission to search the van defendant consented. Officer Szatmary then reentered the van but seized nothing further at that time.

When defendant was booked at the police station his wallet was found to contain four written lists. The lists consisted of 300 to 400 names, ages and dates, with a location or a sum of money entered next to some of the names. Officer Szatmary formed the opinion that the lists included the names of young boys defendant had paid for posing for pornographic photographs.

Defendant's van was taken to a police garage. After defendant was booked Officer Szatmary went to the garage, entered the van and seized the pornographic magazines and paraphernalia he had previously observed. While doing so he observed a loaded revolver in plain view in an open box. When defendant was booked he was being held for investigation of the previously reported sexual assaults. However, after the revolver was found in his van defendant was charged with carrying a concealable weapon.

The next morning, after being informed he need not do so, defendant consented in writing to a search of his van. In the pursuant search the police found a letter and two photographs indicating that defendant, a civilian employee of the United States Naval Air Station in nearby Lakewood, New Jersey, had molested a male child of the S. family, a Navy family living in California. This letter, through the intervention of naval intelligence, led to the evidence supporting defendant's present convictions for molesting the S. children. ■■■ The ultimate search and seizure issue presented by this appeal therefore is whether this letter was lawfully seized.

The Court of Appeal resolved this question in defendant's favor under a *Harvey/Madden* analysis. Briefly stated, the line of cases epitomized by *People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689] and *People* v. *Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971] holds that, "although an officer may make an arrest based on information received through 'official channels,' the prosecution is required to show that the officer who originally furnished the information had probable cause to believe that the suspect committed a felony." The People, the Court of Appeal concluded, did not make the required showing here. Officer Szatmary testified to the information he heard over the patrol car radio, but the officer who originally furnished that information was not called. Finding that the People had for this reason failed to carry their burden of proving the validity of the warrantless arrest, and that the evidence supporting the present convictions ultimately derives from that arrest and not from an independent source, the Court of Appeal reversed the judgment.

■■■ Because the granting of a hearing automatically vacates the opinion of the Court of Appeal (Cal. Rules of Court, rule 976(d); *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71, 74, fn. 2 [127 Cal.Rptr. 317, 545 P.2d 229]), we do not ordinarily discuss the reasoning of that opinion. We depart from our customary practice here because the *Harvey/Madden* issue was raised by the Court of Appeal, not by the parties.

■■■ That defendant did not raise the issue on appeal is understandable. He was precluded from doing so by his failure to preserve the point by appropriate objection in the trial court, as the People pointed out in their petition for rehearing in the Court of Appeal. (*People* v. *Sutton* (1976) 65 Cal.App.3d 341, 347-348 [134 Cal.Rptr. 921]; *People* v. *Moore* (1970) 13 Cal.App.3d 424, 434 [91 Cal.Rptr. 538]; *People* v. *Escollias* (1968) 264 Cal.App.2d 16, 19 [70 Cal.Rptr. 65].) The bar against raising a

*Harvey/Madden* issue for the first time on appeal is but an application of the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal. (See Evid. Code, § 353; *People* v. *Welch* (1972) 8 Cal.3d 106, 114-115 [104 Cal.Rptr. 217, 501 P.2d 225]; *People* v. *De Santiago* (1969) 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353].) The contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal." (*Coy* v. *Superior Court* (1959) 51 Cal.2d 471, 473 [334 P.2d 569].) For the same reason a *Miranda*[1] issue, for example, may not be raised for the first time on appeal. (*In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296]; *People* v. *Bennett* (1976) 60 Cal.App.3d 112, 116 [131 Cal.Rptr. 305].)

The Court of Appeal noted that it did not know whether a *Harvey/Madden* objection would state a ground for suppression in a New Jersey court. Nevertheless, the Court of Appeal treated this as a case presenting a conflict of laws problem and held it governed by California law, "California's interest in the prosecution of a felony committed within its borders [being] entitled to the superior recognition." Whether California or New Jersey law should govern admissibility in a California prosecution of evidence ultimately derived from a search conducted in New Jersey by New Jersey authorities investigating a crime reportedly committed in that state is an interesting question. (See generally Tullis & Ludlow, *Admissibility of Evidence Seized in Another Jurisdiction: Choice of Law and the Exclusionary Rule* (1975) 10 U.S.F. L.Rev. 67.) But, as we need not resolve it in order to dispose of this case, we decline to do so. The issue prompting the Court of Appeal to address the question—the *Harvey/Madden* issue—may not, for the reason stated, be reviewed in this appeal. Of the reviewable issues, none turns, so far as the parties inform us, on which law—California's or New Jersey's—applies. That being so, we proceed to consider defendant's contentions under California law.

■ Defendant's contention that he was arrested without probable cause clearly lacks merit. To repeat the relevant facts: Officer Szatmary was informed that a white male, 35 to 40 years old, driving a light brown van with Georgia license plates, had attempted to perform a sex act on 2 young males at the Lakewood Shopping Plaza. Defendant was a white

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

male of 35 to 40 years of age. He was apprehended a mile from the plaza in a light brown van with Georgia license plates. Pornographic snapshots of young boys, apparently taken therein, were observed in plain sight on the floor of the van. ■ ■■■ Defendant admitted having been at the plaza earlier that day (that is, he admitted having been in a shopping center with a Grant's store and the only Grant's store in Lakewood was at the plaza), and he said he might have talked to some young boys there.[2]

■ The Polaroid photographs were properly seized. Officer Szatmary's observation of them on the floor of the van when defendant opened the door was not a "search" in the constitutional sense because they were in plain view and the officer clearly had a right to be in the position to have that view. (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; *People* v. *Block* (1971) 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961].) That the illumination was provided by the officer's flashlight is of no significance. (*People* v. *Rios* (1975) 51 Cal.App.3d 1008, 1012 [124 Cal.Rptr. 737]; *People* v. *Wheeler* (1972) 28 Cal.App.3d 1065, 1069 [105 Cal.Rptr. 56]; *People* v. *Superior Court (Mata)* (1970) 3 Cal.App.3d 636, 639 [84 Cal.Rptr. 81.) During Officer Szatmary's second "look around" the van, to which defendant consented, nothing further was seized.

■ The subsequent warrantless search of the van at the police garage, resulting in the seizure of the letter linking defendant to the present crimes, was fully justified on two independent grounds. First, consent is an exception to the warrant requirement (*People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135]; *People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852]), and defendant, after being informed that he need not do so, consented in writing to the search. Second, when officers, incidental to a lawful arrest, seize an automobile or other object in the reasonable belief that the object *is itself evidence* of the commission of the crime for which the arrest is made, any subsequent examination of the object for the purpose of determining its evidentiary value does not constitute a "search" as that term is used in the California and federal Constitutions. (*North* v. *Superior Court* (1972) 8 Cal.3d 301, 306 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; *People* v. *Teale* (1969) 70 Cal.2d 497, 511 [75 Cal.Rptr. 172, 450 P.2d 564].) In light of the evidence indicating that the pornographic snapshots were taken in the

---

[2]Officer Szatmary was not required to advise defendant of his *Miranda* rights before asking him whether he had been at the plaza because, as the trial court expressly found, the investigation had not yet reached the accusatory stage. (*People* v. *Morse* (1969) 70 Cal.2d 711, 722-724 [76 Cal.Rptr. 391, 452 P.2d 607].)

van and might depict the victims of the reported assaults, Officer Szatmary clearly had reason to believe that the van was itself evidence of the crimes for which defendant had been arrested.

Finally, in a cryptic six-line argument defendant contends this case is "similar" to *People* v. *Creighton* (1976) 57 Cal.App.3d 314 [129 Cal.Rptr. 249]. In *Creighton,* another prosecution for violation of section 288, the defendant contended that under the circumstances it was error to instruct the jury, in accordance with CALJIC No. 4.71, that "When, as in this case, it is alleged that the crime charged was committed 'on or about' a certain date, if the jury finds that a crime was committed it is not necessary that the proof show that the crime was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date." The Court of Appeal agreed, noting that the instruction permitted the jury to convict the defendant without agreeing on a single specific act as the basis for the conviction. (57 Cal.App.3d at pp. 318-321.)

The error complained of in *Creighton* did not occur here. CALJIC No. 4.71 was not given. Given instead was a defense-requested instruction expressly modeled on *Creighton*: "You are hereby instructed that you are not to find the defendant guilty . . . unless you shall have unanimously agreed with respect to each count that the finding of guilt relates to a single specific act. If you are unable to so agree, you must acquit the defendant upon each count where no unanimous agreement can be reached regarding a single specific act."

The judgment is affirmed.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.