[L.A. No. 31232. July 10, 1980.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
JOHNNY WELLS, JR., Real Party in Interest.

COUNSEL

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Arnold T. Guminski, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Drees & Carney and Michael C. Carney for Real Party in Interest.

OPINION

**CLARK, J.**—The People petition for writ of mandate (Pen. Code, § 1538.5, subd. (o))[1] seeking review of respondent court's order suppressing evidence in a murder prosecution (§ 187) as the fruit of an illegal arrest. In granting the suppression motion, the trial judge expressly resolved "all issues of credibility and fact in favor of the People." Therefore, as the judge stated: "The only issue is one of law as to whether or not the facts as set forth by the officer constitute probable cause to arrest the defendant." As the arrest was lawful, the writ shall issue.

Responding one evening to a police radio report concerning a gunshot victim, an officer discovered a dead man lying on the ground. A bloodstain "mushroomed" around what appeared to be a bullet wound in the victim's chest.

Defendant was standing on the sidewalk directly across the street from the body. He was "all by himself." No one else was in the vicinity. He looked in the officer's direction, turned around and walked away.

After conducting a brief fruitless search for witnesses, the officer examined the victim more carefully and recognized him as Gaylord Brown. The officer knew defendant had a motive to murder Brown. He recalled he had arrested defendant for possession of dangerous drugs a month earlier and that defendant, claiming the drugs were not his but Brown's, complained his parole would be revoked if he were convicted "for Gaylord's dope." The officer had testified at defendant's prelimi-

---

[1]Statutory references are to sections of the Penal Code unless otherwise noted.

nary hearing in that case the day before. The officer also knew defendant had a propensity to violence. He recalled that defendant had been convicted of "attempting to kill a pregnant lady during a robbery" and had been arrested for other robberies.

Suspecting defendant of having murdered Brown, the officer found him walking across a nearby intersection and detained him. The officer testified: "I conducted a patdown search of the defendant for offensive weapons, and during that search I observed what appeared to be blood-stains on the inner left portion of his left shoe. I also observed bloodstains on the left thigh portion of his trousers." The bloodstains on defendant's shoe were "quite small." The officer then arrested defendant for Brown's murder. While handcuffing him, the officer noticed a bandaid on the little finger of defendant's left hand, a slight laceration on the top of that hand and blood on the palm of one of his hands, which one was not specified. Approximately 20 minutes passed from the time the officer discovered the victim's body until he arrested defendant.

The challenged evidence—defendant's clothing and property found on his person, a sample of his blood, the results of a gunshot residue test performed upon him and statements made by him—was suppressed on the ground it was the fruit of an illegal arrest.

■ Defendant contends, first, that the officer's observation of blood-stains on defendant's clothing while patting him down for weapons may not be considered in determining whether the officer had probable cause to arrest him because this observation was itself the fruit of an illegal pat-down. Defendant may not now be heard to complain that the officer did not have reason to conduct the pat-down. He is precluded from raising this issue on appeal by his failure to make a timely and specific objection on this ground in the trial court (*People v. Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048]; *People v. Talley* (1967) 65 Cal.2d 830, 837-838 [56 Cal.Rptr. 492, 423 P.2d 564].)[2]

---

[2]Moreover, the contention clearly lacks merit. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (*Terry v. Ohio* (1968) 392 U.S. 1, 24 [20 L.Ed.2d 889, 908, 88 S.Ct. 1868].) As the officer reasonably suspected defendant of having shot Brown to death only moments before, he clearly had reason to believe defendant was "armed and presently dangerous." The pat-down was, accordingly, entirely appropriate.

■ We now turn to the question whether, taking the bloodstains into consideration, the officer had probable cause to arrest defendant.

■ "Cause for arrest exists when the facts known to the arresting officer 'would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.' [Citations.]" (*People v. Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].)

■ The facts known to the officer when he arrested defendant were: (1) A bloodstain "mushroomed" from what appeared to be a bullet wound in Brown's chest. (2) Defendant was standing directly across the street from Brown's body, "all by himself," when the officer arrived; no one else was in the immediate vicinity. (3) Defendant had a motive to murder Brown. (4) Defendant had a propensity to violence. (5) Defendant had bloodstains on his clothing. These facts clearly "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion" that defendant had murdered Brown.[3]

Accordingly, the writ of mandate shall issue as prayed.[4]

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**NEWMAN, J.,** Concurring.—California Rules of Court, rule 29(a) advises that "hearing in the Supreme Court after decision by a Court of Appeal will be ordered... where it appears necessary to secure uniformity of decision or the settlement of important questions of law...."

---

[3]Defendant points out that the bandaid and laceration the officer subsequently noticed on defendant's left hand indicated the bloodstains on his clothing might have an innocent explanation. However, "[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." (*In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].)

[4]Justice Newman's concurring opinion inappropriately attacks his colleagues for their effort to correct what we unanimously agree to be a legal wrong. His attack is particularly unjustified in view of the circumstances in which this cause comes to us. After the Court of Appeal first denied a petition for writ of mandate, this court—including Justice Newman—granted a petition for hearing, transferred the cause to ourselves but retransferred it to the Court of Appeal with instructions to issue its alternative writ. The Court of Appeal was thus required to determine the matter but—as it had on the prior occasion—concluded the petition lacked merit. Only then did we grant the resulting petition for hearing to finally resolve the matter.

The issue in this case is whether certain facts constituted probable cause for an arrest. In an unpublished, seven-page opinion the Court of Appeal (with one of the three justices dissenting, also in a seven-page opinion) explained why it found no probable cause.

We now hold, unanimously, that the arrest was legal. By no means am I persuaded that the holding was "necessary to secure uniformity of decision or the settlement of important questions of law. . . ." Quoting from *People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632], we simply identify another set of facts that "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion" that defendant had committed a murder.

In an important case decided by the United States Supreme Court 30 years ago Justice Frankfurter, with the concurrence of all his colleagues, made this comment: "Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied." (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 491 [95 L.Ed. 456, 469, 71 S.Ct. 456].)

A parallel rule could be applied by this court to issues that involve arguably illegal arrests, arguably illegal searches and seizures, injuries that allegedly arise out of and in the course of employment, and other marginal matters. Does rule 29(a) imply, perhaps, that we should intervene only in the relatively rare cases where a California Court of Appeal appears to have misunderstood or grossly misapplied the basic standard?

**BIRD, C. J.**—I concur in the majority opinion but I write separately to strongly dissent from the view of my colleague, Justice Newman, that this court use a unique interpretation of California Rules of Court, rule 29(a), to reduce the work of a justice.

To support his position, Justice Newman cites language from a 30-year-old case involving an interpretation as to what rule Congress intended the federal courts to use in weighing the adequacy of an administrative agency's findings. Next, he suggests a "parallel rule" be

applied by this court when deciding whether to grant or deny hearings. As an example, he denominates issues which involve a possible violation of the Bill of Rights embodied in our Constitution as "marginal matters." He suggests that violations of these basic rights be reviewed by this court "only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied." (Conc. opn. by Newman, J., at p. 675.)

Such an interpretation ignores the central role of the judiciary in our system of government. To advocate that this court dismiss violations of the state and federal Constitutions as merely "marginal matters" and then to suggest that limitations be imposed on our responsibilities in those cases as a means of lightening this court's workload cannot and should not go unchallenged. What price is this court being asked to pay for less work? Further, if this court is not the protector of the rights of our citizens under the Bill of Rights, who is?