[Crim. No. 5368. Fifth Dist. Aug. 11, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW CRUZ SEDILLO et al., Defendants and Appellants.

**COUNSEL**

Jack I. Kaiser and James A. Wainwright, under appointments by the Court of Appeal, for Defendants and Appellants.

Quin Denvir, State Public Defender, and George L. Schraer, Deputy State Public Defender, as Amici Curiae on behalf of Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, J. Robert Jibson, Joel Carey and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**\*—We filed our former opinion in this cause on May 7, 1982, holding that the trial court had prejudicially erred in denying appellants' suppression motion. Respondent filed a petition for rehearing. We granted a rehearing and heard oral argument. After further consideration we have decided our original conclusion was correct. Accordingly, we refile the opinion with some additional discussion of the points raised by respondent.

Appellants were convicted after jury trial of receiving stolen property (Pen. Code, § 496). The trial court earlier had denied their joint motion to suppress evidence (Pen. Code, § 1538.5) seized during a warrantless entry of their house. Each appellant contends the trial court erred in denying the suppression motion "since there was no testimony of a specific and articulable fact from which a rational link between the items seized and criminal activity could be inferred." Respondent counters this contention is not cognizable because it was never raised below. For reasons to be stated we will hold the issue was raised and respondent failed adequately to justify the warrantless seizure.[1]

In *Wilder* v. *Superior Court* (1979) 92 Cal.App.3d 90 [154 Cal.Rptr. 494], this court held the trial court had erred in denying petitioner's motion to suppress. Petitioner moved to suppress specifically described evidence on the ground it was seized without a warrant. In issuing a writ of mandate, we rejected the theory expressly raised below by real party and held real party was precluded from asserting justifications not raised below. We explained the procedural pitfall into which real party had stumbled: "Petitioner relied from the start upon the rule of law which requires real party to justify a warrantless seizure of evidence; therefore, if real party fails to justify the seizure, petitioner wins his suppression motion whether or not petitioner asserts subsequent spe-

---

\*Before Brown (G. A.), P. J., Zenovich, J., and Martin (R. L.), J.†

[1]We do not reach appellant Moreno's contention of evidentiary insufficiency.

†Assigned by the Chairperson of the Judicial Council.

cific contentions. The trap has been laid; it snaps shut when real party fails to justify the seizure because its attention has been diverted to petitioner's surplus specific contentions—even if real party demonstrates that such contentions are meritless, the evidence is suppressed if real party has not in fact carried its burden of justification for the seizure." (*Id.*, at p. 97.) (*Accord, People* v. *Palmquist* (1981) 123 Cal.App.3d 1, 12, fn. 7 [176 Cal.Rptr. 173].)

In the instant case, appellant Sedillo filed a written "notice of motion and memorandum of points and authorities in support of motion to suppress evidence pursuant to Penal Code section 1538.5." The motion asserted violations of the California and federal Constitutions, and was directed at "the observations made by the police officers incident to the search of the residence at 1809 North Turner Street, Visalia, California on July 28, 1980, including items seized, and/or photographed, and/or the fruits of these seizures or observations including statements of witnesses and/or parties." Appellant asserted the items were seized without warrant and relied expressly on the rule the prosecution bears the burden of justification. Appellant referred explicitly to *Wilder*.

The prosecution filed a written response to appellant's points and authorities. The response contained a "statement of facts" with references to the reporter's transcript of the preliminary hearing. The response advanced the assertions that "the search and seizure of the residence at 1809 West Turner Street was justified under the doctrine of 'hot pursuit'" and "the search and seizure of the residence at 1809 West Turner Street was justified under the doctrine of exigent circumstances." The prosecution concluded the property was legally seized because it was "in plain sight," citing as authority *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1].

When the matter came on for hearing, appellant Moreno joined in appellant Sedillo's motion. The parties stipulated no warrant existed and that the matter could be based on the preliminary hearing transcript plus the testimony of one defense witness. After the witness testified, the matter was submitted without further argument. The judge later denied the motion.

The critical preliminary hearing testimony came from Visalia Police Officers Joseph Rodriguez and George Jewett. Rodriguez testified that on July 28, 1980, he arrived at 1042 West Prospect Street at about 8:45 p.m., pursuant to an assault with a deadly weapon dispatch. He saw lots

of really excited people in the street. He was told appellant Sedillo had assaulted some person there with a knife. Rodriguez saw appellant Sedillo running in the front yard of 1809 West Turner. Rodriguez identified himself as a police officer and told Sedillo to stop. Sedillo ran into the house and Rodriguez followed.

While Rodriguez did not locate appellant Sedillo, he did find "lots of property in Sears' containers," some televisions, stereos, lawn edgers, sewing machines, and a vacuum cleaner. He contacted his field supervisor. Later, Rodriguez participated in seizing some of the items.

Jewett testified he came to the Turner Street residence at Rodriguez' request. Items were seized by other officers, loaded into a pickup truck, and driven to the Visalia Police Department. The items were "three AM-FM stereo receivers. There were six Virtuso speakers. Two AM-FM stereo systems, Sears brand, three color televisions, two vacuum cleaners, two sewing machines, and three Craftsman trimmer-edgers." Jewett identified photos which he had taken of the seized items.

Appellants now argue the above evidence establishes no more than a generalized suspicion the items were stolen, with no evidence either officer was aware of information to link any particular item to any particular crime. Appellants rely on *People v. Murray* (1978) 77 Cal. App.3d 305 [143 Cal.Rptr. 502], and *Nunes v. Superior Court* (1980) 100 Cal.App.3d 915 [161 Cal.Rptr. 351].

Respondent argues appellants' failure to specifically object on this ground below deprived the prosecution of the opportunity to show the evidence seized had the requisite nexus to criminality.[2] We read this as an implied concession that appellants' contention, if cognizable, is meritorious.

*Murray, supra*, 77 Cal.App.3d 305, supports appellants' contentions on the merits. There, police officers entered a motel premises under authority of a search warrant which authorized seizure of a number of items which did not include television sets. The officers had general knowledge appellant was fencing stolen property. They did not find the sought items; but in a storage room and bedroom adjacent to defendant's office, they saw numerous items, including a shotgun and 67

---

[2] In fact, respondent refers to trial testimony which would tend to show such nexus, in the form of Jewett's knowledge of the July 28 burglary of Sears and the items taken.

television sets, 20 of which had their serial numbers removed. All the items were seized. This court held the plain view doctrine validated seizure only of the 20 sets sans serial numbers:

"While a search and seizure conducted pursuant to a warrant is presumed to be legal and the burden is on the defendant to show the illegality [citation], the seizure before us was not pursuant to a warrant but was by virtue of the plain view doctrine. The burden therefore in this regard is upon the prosecutor [citation] to show the applicability of the plain view doctrine. The prosecutor has failed to carry that burden. The two television sets upon which counts one and two were predicated were not inherently identifiable as contraband nor were they identified at the scene as having obliterated serial numbers or other distinctive markings to set them apart from any other Sony or RCA sets of the same make and model. It follows therefore that the seizure was not justified under the plain view doctrine and evidence thereof should have been suppressed.

"The respondent argues that notwithstanding the lack of individual identification of the two television sets as being contraband, the seizure thereof could be sustained upon the theory that the officers had probable cause to believe the items were stolen, thus justifying the seizure.

"Respondent points out that the evidence showed that the officers had general knowledge that appellant was fencing stolen property, that when they entered the combination bedroom/storage room they observed numerous items, including a shotgun, some 67 television sets, 20 of which had their serial numbers removed, and all of which were seized.

"We decline to stretch the plain view doctrine to those limits as to do so would be to throw out the central purpose of a warrant, which is to interpose an unprejudiced and detached judicial mind between the officer and the seizure and to eliminate discretion in the officer. [Citations.] Notwithstanding a generalized suspicion that the television sets and other items had been stolen, and aside from the 20 television sets from which the serial numbers had been removed, the testimony at the preliminary hearing did not establish that the officers in fact knew which items were contraband and which items legitimately belonged to the appellant." (*People* v. *Murray, supra*, 77 Cal.App.3d at pp. 310-312, fns. omitted.)

Likewise, in *Nunes*, this court invalidated the seizure of certain items taken "on the general suspicion that they coincided with descriptions of stolen property contained in police reports not in their [the searching officers'] possession." (*Nunes v. Superior Court, supra*, 100 Cal.App.3d at p. 932.) From the cases we distilled the rule "the police must have a *specific* basis upon which to rationally select items as evidence of criminal activity under the plain view doctrine." (*Ibid.*)

The instant case resembles *Murray* and *Nunes* because the items seized were not inherently identifiable as contraband, did not possess distinctive markings indicative of stolen property, and were not identified as contraband through radio transmission or by victim identification (see *People v. Superior Court (Meyers)* (1979) 25 Cal.3d 67 [157 Cal.Rptr. 716, 598 P.2d 877]). The instant case is weaker than *Murray* and *Nunes* because neither seizing officer testified to even a *generalized* suspicion the items were stolen let alone any basis for same.

 The remaining question is whether appellants' contention is cognizable. It is cognizable for the reasons stated in *Wilder, supra*, 92 Cal.App.3d 90.

Appellants moved to suppress specifically described property and relied on the general rule the prosecution was required to justify a warrantless seizure. Under *Wilder*, "[t]he prosecutor should have pleaded his justification prior to the hearing based upon the facts he expected to prove at the hearing." (*Wilder v. Superior Court, supra*, at pp. 96-97.) Moreover, once appellants produced evidence at the hearing that the seizure was warrantless, under well-established principles the burden of proof of the justification shifted to the prosecution. (*Wimberly v. Superior Court* (1976) 16 Cal.3d 557, 563, fn. 2 [128 Cal.Rptr. 641, 547 P.2d 417]; *Guidi v. Superior Court* (1973) 10 Cal.3d 1, 15, fn. 15 [109 Cal.Rptr. 684, 513 P.2d 908]; *Badillo v. Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

The instant record can be viewed in two ways. Either the prosecution pleaded a complete and proper theory of justification but failed to prove it *or* the prosecution's pleading *and* proof were incomplete. Neither interpretation of the record helps respondent's current position.

Ultimately, the justification had to cover both the initial entry into the house and the seizure, once inside, of the subject property. For the reasons stated above, the prosecution failed to justify the ultimate sei-

zure. Respondent's argument is grounded on the notion the defense was required to put the prosecution on notice as to its failure of proof. Respondent has cited no persuasive authority for such a requirement.

■ As the amici note, a defendant is not barred from challenging on appeal the sufficiency of the trial evidence by his failure to inform the prosecution of the specific proof defect. Moreover, the same rule applies to a motion for a judgment of acquittal. (Pen. Code, § 1118.1.)

Just as the defense is not required to flag failures of proof, neither is it required to flag pleadings which assert only an *incomplete* justification. Thus, defense failure to object to a defectively pled justification does not narrow the issues or lessen the prosecution's proof burden.

If the defense were required to object, either to the pleading or proof of the justification, we would come full circle to the anomaly which *Wilder* sought to correct. The burden would effectively be shifted back to the defense to anticipate and refute justifications. Thus, applied to the instant case, the defense would have had to show—or at least argue—the plain-view rule was not factually applicable, even though the applicability of the rule properly was part of the prosecution's burden of justification.

At oral argument, respondent sought to distinguish proof of the elements of a substantive offense from proof of complete justification for a warrantless search and seizure on the basis the elements of a crime are clear. Since the "elements" of a valid plain-view seizure are likewise well established, the instant case provides a poor vehicle for respondent's attempted distinction.

■ Respondent also argues "an imaginative defense attorney can *always* come up with another basis for attacking a warrantless search and seizure" and the prosecution should not be required to anticipate every conceivable attack. Our holding does not require the prosecution to prove a negative, to refute facts not at issue, but only affirmatively to prove the justification for a warrantless search and seizure.

Respondent suggests this holding will cause great practical problems for trial courts and prosecutors alike. We disagree. True, under the established rules which we follow, the prosecutor must prove each step of the justification. However, as a practical matter, the defense usually is

likely to be concerned with only a small part of the total chronology —for example, the validity of the initial stop, etc.

It is common for defense counsel unilaterally and expressly to narrow the issues to one or two critical points. Where defense counsel does not do so, nothing would preclude the prosecutor from seeking an agreement as to what critical points are at issue. In the event the parties do not narrow the issues, the judge remains free to attempt to secure an agreement as to the scope of the true issues. An agreement relieving the prosecution of proving part of its justification then will bind the parties on appeal.

*People* v. *Superior Court* (*Wells*) (1980) 27 Cal.3d 670 [165 Cal.Rptr. 872, 612 P.2d 962] and *People* v. *Rogers* (1978) 21 Cal.3d 542 [146 Cal.Rptr. 732, 579 P.2d 1048], on which respondent relies, are inapposite. While each case holds defendant's failure to make a specific objection precluded appellate review, the Supreme Court does not discuss the principle relied on in *Wilder*, and the opinion does not show the defendant relied on the rule the prosecution was required to justify a warrantless search.

We hold the trial court prejudicially erred in denying appellants' suppression motion.

The judgments are reversed.

Respondent's petition for a hearing by the Supreme Court was denied October 28, 1982. Richardson, J., was of the opinion that the petition should be granted.