[No. B036275. Second Dist., Div. Two. July 10, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
ALBERT JOSEPH CAMPOBASSO, Defendant and Respondent.

COUNSEL

Ira Reiner, District Attorney, Arnold T. Guminski and Robert W. Carney, Deputy District Attorneys, for Plaintiff and Appellant.

Stephen M. Hogg for Defendant and Respondent.

OPINION

GATES, J.—The People appeal from the order of dismissal entered after the trial court granted defendant's motion to suppress evidence pursuant to Penal Code, section 1538.5. They contend: "I. The observations of an officer from a place he lawfully had a right to be do not constitute a search. II. When the officer observed the large quantities of drugs he believed were illegally possessed in the open storage locker, he had reasonable cause to arrest whoever possessed that storage locker."

On January 12, 1987, Los Angeles Police Officer Peter Walker and several other officers traveled to a North Hollywood public storage facility, after Walker had received a telephone call from an unidentified male reporting

the presence of a large quantity of "drugstore-type" narcotics in locker number 17 at that location.

Upon his arrival, Walker simply drove into the complex since it was open to the public. When he reached the designated locker, which was inside a building "with dozens and dozens of rental lockers," its door stood ajar one to two feet, apparently as the result of a recent burglary. From his vantage point in the hallway outside the locker, the officer observed scattered about the floor "several boxes of pharmaceutical narcotics," including morphine, demerol, codeine, darvon and darvocet, as well as two or three suitcases, one of which was open and filled with similar boxes. He concluded the drugs were contraband from a burglary since "this type of narcotics is not available to the public in these particular forms and amounts."

At that point, Walker entered the locker and inspected its contents. He then placed the area under surveillance for some five hours, but no one approached. Shortly before the facility closed for the evening, Walker learned from its manager that locker number 17 had been rented to an "A. J. Camp," a name admittedly used by defendant. The manager also provided him with defendant's home address on Lankershim Boulevard and telephone number.

Officers immediately went to the Lankershim Boulevard address, where they arrested defendant for possession of controlled substances about an hour later as he drove into the parking lot. During the ensuing search of defendant's apartment, to which he had consented after being advised of and waiving his constitutional rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), Officer Walker recovered the evidence which formed the basis of the instant prosecution, i.e., a triple-beam balance scale and a briefcase containing in excess of $10,000 in cash, cocaine, "pay and owe sheets," "instructions to customers . . . on how to order cocaine and what coded messages to leave on an answer phone," "prices of certain amounts of cocaine," and packaging material.

Testifying in his own behalf, defendant conceded he had rented the locker, but claimed he had abandoned it in early November. He denied that he had consented to the search of his apartment.

The comments made by the trial court in granting defendant's suppression motion reveal that its ruling was based not upon a rejection of the officers' credibility, but upon the erroneous conclusion that their actions at the public storage facility rendered defendant's subsequent arrest illegal.

■ Quite apart from the fact defendant's own sworn testimony made manifest his lack of standing to challenge the officer's conduct with regard to the subject locker (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 133-134 [58 L.Ed.2d 387, 394-395, 99 S.Ct. 421]; *In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744]; Cal. Const., art. I, § 28, subd. (d)), in the absence of any indication that visual access to its contents was obtained as a result of an intrusion on the part of the police (*People* v. *Berutko* (1969) 71 Cal.2d 84, 91 [77 Cal.Rptr. 217, 453 P.2d 721]), it is manifest that Officer Walker's observation of contraband in plain view from a place he was legally entitled to be, i.e., a common hallway, was not a "search" in the constitutional sense. (*Arizona* v. *Hicks* (1987) 480 U.S. 321, 328 [94 L.Ed.2d 347, 356, 107 S.Ct. 1149]; *Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; *People* v. *Rogers* (1978) 21 Cal.3d 542, 549 [146 Cal.Rptr. 732, 579 P.2d 1048]; *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].)[1]

■ It is likewise clear that the items visible from the corridor were such as would lead a person " 'of ordinary care and prudence to . . . conscientiously entertain an honest and strong suspicion . . .' " that the individual who had rented the storage locker was guilty of a crime. (*People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632]; *People* v. *Superior Court (Wells)* (1980) 27 Cal.3d 670, 674 [165 Cal.Rptr. 872, 612 P.2d 962]; *Texas* v. *Brown* (1983) 460 U.S. 730, 742 [75 L.Ed.2d 502, 514, 103 S.Ct. 1535], quoting *Carroll* v. *United States* (1925) 267 U.S. 132, 162 [69 L.Ed. 543, 555, 45 S.Ct. 280, 39 A.L.R. 790] (plur. opn. of Rehnquist, J.).) This fact is in no way diminished because the People, for some unexplained reason, elected not to file charges against defendant for the contraband discovered in locker number 17.

Since probable cause to arrest defendant arose before Officer Walker entered the locker and conducted a search of its contents, we need not consider whether this latter conduct unlawfully compromised a protected privacy interest of whoever actually owned the materials found therein.

We reject defendant's claim that there was insufficient reason to suspect him of possessing the contraband seen in the locker and hence his arrest was illegal. Officer Walker dispatched officers to the address supplied by the storage facility manager with instructions to determine whether A. J. Camp did, in fact, reside in that apartment. As a result of the information Walker received on Camp's identity and the type of vehicle he owned, the officer

---

[1] As our highest court pointed out in *Lorenzana* v. *Superior Court, supra,* 9 Cal.3d at page 629, "A sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there. . . ."

joined his fellow officers at the Lankershim Boulevard apartment complex and assisted in the arrest of defendant when he drove up in a red Corvette. That the officers quickly ascertained the connection between "A. J. Camp" and "Albert Joseph Campobasso" does not strain credulity. As defendant himself testified in response to a prosecution remark regarding his assumption that the police knew his identity because they had the name "A. Camp," "Well, yeah. [¶] But I put my own address, my own phone number, my own zip code, my own driver's license number down on the paperwork with the—the—with the storage locker place. [¶] How difficult could it be?"

The order under review is reversed.

Compton, Acting P. J., and Fukuto, J., concurred.