Filed 7/14/23  P. v. Lish CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061632 |
| v. | (Super. Ct. No. 19NF3380) |
| DANIEL DOUGLAS LISH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lewis W. Clapp, Judge.  Affirmed.

Law Offices of Melanie L. Skehar and Melanie L. Skehar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Melissa A. Mandel, Supervising Deputy Attorney General and Joseph C. Anagnos, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Daniel Douglas Lish challenges the trial court's sentencing decision to impose a three-year upper term. A jury convicted Lish of felony drunk driving. The court then found he had previously been convicted of felony drunk driving and that the underlying incident supported two aggravated circumstances.

Lish contends we must reverse because under newly amended Penal Code section 1170, subdivision (b) (all further undesignated statutory references are to this code), the trial court's sentencing decision rested on insufficient evidence and legal errors. We are not persuaded and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. *Drunk Driving Incidents*

Lish has been convicted of drunk driving numerous times. Nine-and-a-half years before the incident that precipitated this matter, Lish pleaded guilty to drunk driving in May 2010 (the 2010 conviction). It resulted in a felony conviction because he had been previously convicted of felony drunk driving in 2004, in addition to another drunk driving conviction in 1997.

For the incident that precipitated this matter, Lish was subsequently involved in a December 2019 drunk driving incident on a rainy residential street. After one o'clock in the morning, a witness who had been sleeping at home heard what sounded like an automobile collision and then saw Lish exit his truck as it had two flat tires pinned next to a curb.

The witness saw Lish leave the scene and return in what would later be identified as his mother's vehicle. Lish parked the vehicle with flashers engaged behind his disabled truck and threw what looked like a beer can over a wall. Law enforcement officers made contact with Lish at the scene, found nine unopened beers of a twelve-pack in his vehicle, and ultimately transported Lish to jail. A test of Lish's blood revealed a

2

blood-alcohol concentration (BAC) of 0.303 percent. The incident did not involve any other vehicle or third-party injury.

### B. Charges and Allegations

For the 2019 incident, the Orange County District Attorney's Office charged Lish in an information with two felonies, driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 1) and driving with an illegal blood-alcohol concentration (Veh. Code, § 23153, subd. (b); count 2), and alleged Lish had driven with a blood-alcohol concentration of 0.20 percent or more (Veh. Code, § 23538, subd. (b)(2); BAC allegation) within 10 years of the 2010 conviction (Veh. Code, § 23550.5; prior conviction allegation).

Central to this appeal, the information also alleged aggravating circumstances for counts 1 and 2 (the aggravating circumstances allegation). Specifically, that Lish's conduct fit a description set forth in California Rules of Court (CRC), rule 4.421(a)(1): a crime that "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."

### C. Jury Trial, Court Trial, and Sentencing Hearing

At a June 2022 jury trial, according to his appellate briefing, "Lish testified that he only became intoxicated by the time he got to the jail but he was not under the influence of alcohol at the time he drove his car and his mother's car." The jury rejected Lish's version of events when it convicted him of both counts charged and found the BAC allegation true.

The trial court released the jury and then immediately conducted a bench trial on the prior conviction. The court received a certified record of Lish's 2010 conviction (that included his written admissions to the 2004 and 1997 convictions noted above). The court then found beyond a reasonable doubt that the prosecutor's prior conviction allegation was true.

3

The trial court then scheduled a sentencing hearing for the following month, ordered a probation and sentencing report to be created, and discussed with the parties the prosecutor's aggravating circumstances allegation. Lish's counsel requested a continuance to conduct a bench trial on the allegation and indicated he would submit a sentencing brief as part of his argument. The court granted the continuance and shared its then tentative impression that the evidence presented to that point supported findings of aggravating circumstances.

The parties submitted sentencing briefs. Lish requested the trial court grant formal probation in lieu of incarceration and order him to participate in an alcoholism rehabilitation program. The prosecutor argued probation should not be granted and that Lish should be sentenced to a two-year middle term of incarceration pursuant to the determinate sentencing laws. (§ 1170 et seq.)

As ordered, the probation department created a probation and sentencing report (the probation report). It included interview statements Lish gave to a probation department officer, as well as letters by individuals who knew Lish and shared their favorable opinions about him.

At the scheduled July 2022 sentencing hearing, the trial court discussed the probation report and entertained oral arguments by the parties. The court rejected Lish's request for probation and sentenced him on his count 1 conviction[1] to the upper term of three years imprisonment (§ 1170, subd. (h)(1)), to be served through 16 months of county jail incarceration and 20 months through mandatory supervision. We quote relevant portions of the hearing transcript below.

---

[1] The sentence for the count 2 conviction was stayed pursuant to section 654.

## DISCUSSION

*A. Governing Law and Standard of Review*

Lish and the Attorney General agree that we review the trial court's sentencing decision based on the abuse of discretion standard of review. Recent Senate Bill No. 567 (Stats. 2021, ch. 731, eff. Jan. 1, 2022; SB 567) added new subdivisions to section 1170 that governed the trial court's sentencing decision in this case, implementing new rules on the imposition of an upper sentence term.

The five subdivisions central to this appeal provide as follows: "(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).

"(2) *The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.* Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense.

"(3) *Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction* without submitting the prior convictions to a jury. This paragraph does not apply to enhancements imposed on prior convictions.

5

"(4) At least four days prior to the time set for imposition of judgment, *either party* or the victim, or the family of the victim if the victim is deceased, *may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts. The court may consider the record in the case, the probation officer's report*, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, *and any further evidence introduced at the sentencing hearing*.

"(5) The court shall set forth on the record the *facts and* reasons for choosing the sentence imposed. *The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law*." (§ 1170, subds. (b)(1)-(5), italics added.)


B.  *The Trial Court's Sentencing Hearing*

Based on the above, the trial court was required to create a record of factual bases for its findings on aggravating circumstances, to justify its upper term sentencing decision. (§ 1170, subds. (b)(1), (2) & (5).) According to the reporter's transcript of the court's July 2022 sentencing hearing, the same trial court judge who conducted the June 2022 jury trial and initial bench trial on the prior conviction allegation explained his sentencing decision at the July 2022 hearing, as follows:

"I am going to impose, because of the aggravating circumstances, in particular, his prior convictions, that he was at a high level of blood alcohol level in this case, he was in an accident, or not – – I mean, Mr. Lish [testified at trial] that he ran over some objects that flattened his tires. It appears to the court, based on the evidence, that he actually ran into a curb, and that's from the testimony of [a witness] who was wakened by the sound of the crashing into the curb.

6

"But the factors in aggravation set forth in the probation and sentencing report weigh in favor of an upper term in state prison in this case[, a]nd the court is going to impose that upper term of three years in the state prison."

Subsequently, Lish's counsel made the following objection: "As far as this particular factor in aggravation, the only circumstance that could have been pled and proven is whether the court can find beyond a reasonable doubt that there was a threat of great bodily harm in this case, your Honor.¶ And I as noted in my sentencing brief, this is a DUI. In every DUI, whether it be a felony or a misdemeanor, there is always inherent threat of great bodily harm. So I don't believe that this [] would be a justifiable factor in aggravation.¶ And so I don't think the three year maximum is appropriate in this case[, a]nd that he should be answered to the default, which would be two years in state prison."

The prosecutor responded by reminding that the aggravating circumstances allegation covered multiple, independently sufficient circumstances. He argued most relevant to Lish's conduct were two separate factors of "threat of great bodily harm" and "high degree of . . . callousness." (CRC, rule 4.421(a)(1).)

Lish's counsel then rephrased his argument as follows: "I believe for the court to justifiably give [Lish] the maximum sentence, they have to find true that it was proven beyond a reasonable doubt that the aggravating factor that is alleged, which was, in this case, the great bodily harm of injury, the threat of great bodily harm, and as [the prosecutor] indicated, the callousness, viciousness of the offense has to be proven to this court beyond a reasonable doubt to justify the upper term.

"And my argument is this is just a standard DUI. And it's true that there is a threat of harm or callousness in any DUI, regardless of it being a misdemeanor or a felony, so I don't believe it would be appropriate to sentence [Lish] on the maximum term for that reason."

The prosecutor counterargued: "This is not a run-of-the-mill DUI. This is not a person driving with a .06 or a .08, getting pulled over for having no headlights. This is a completely different case.

"This is a case where the defendant was driving with a very high blood alcohol concentration[, a]nd, as the court characterized it, runs into a curb, and then goes and drives another car. So I believe that [] demonstrates the high degree of callousness, as well as the threat of damage to the community.

"The elements [required for Lish's convictions] in this case did not require that there was a collision. So, essentially, the people are not, for lack of a better word, double dipping and the elements of this case, also -- or these charges do not require that the people must prove that the defendant drove multiple vehicles. So, once more, the people are not double dipping into the facts of this case in order to reach a true finding by this court based on this allegation."

The trial court judge gave his final explanation for his decision to impose the upper term as follows: "[T]he court believes that there was a threat of great bodily harm when you have a person such as Mr. Lish, who has had multiple, at least five, and maybe as many as seven or six prior DUI convictions, and then he gets himself to a .30 [percentage BAC] and is intoxicated enough that he was in an auto accident, be it all by himself. I believe the evidence showed, beyond a reasonable doubt, in my mind, he crashed into the curb. So there was a threat of great bodily harm.

"I think it was callous on his part the way the crime was carried out. Just because – – you know, on the one hand, you might say, well, he was so intoxicated, that he didn't really intend to be callous, he was just acting the way an intoxicated person does. But to drink, after drink, after drink, after drink, and get to that blood alcohol level and then drive, I just think it's callous given what he knew about his own prior alcohol problems and convictions.

8

"So I find that [] factor in aggravation is true. Now, I'm not sure where that gets me, but I do believe it's true. And I do believe that the upper term is appropriate."

Earlier at the hearing, the court noted it had considered information about Lish's circumstances presented in the probation report, including "the fact that he ha[d] been on the straight and narrow, so to speak, for over nine years [before the 2019 incident]." Before concluding the hearing, the trial court judge revisited the topic and made some comments directly to Lish that included the following: "I don't believe you to be criminal or a bad person for a minute. I just think that you have a problem, you are addicted to alcohol."

*C. Analysis*

The trial court's first aggravating circumstance finding of a threat of great bodily injury rests on three factual bases the court "set forth on the record" (§ 1170, subd. (b)(5)): (1) that Lish suffered "at least five, and maybe as many as seven or six prior DUI convictions"; (2) that he had a 0.30 percent blood-alcohol concentration in the underlying 2019 drunk driving incident; and (3) that Lish's vehicle struck the curb because he had been driving under the influence of alcohol. For the second aggravating circumstance, acts disclosing a high degree of callousness, the court set forth two of the same bases: (1) that Lish suffered "at least five, and maybe as many as seven or six prior DUI convictions"; and (2) that he had a 0.30 percent blood-alcohol concentration in the underlying 2019 drunk driving incident.

On appeal, Lish claims five independent grounds for reversal. The first three assert insufficient evidence of: (1) Lish's multiple prior convictions; (2) a threat of great bodily harm; and (3) acts disclosing a high degree of callousness. His remaining two grounds assert theories of legal error: (4) the trial court's decision violated the dual fact bar (because the same facts that enhanced his punishment *before* the court's

9

aggravating circumstances findings were *also* subsequently used to support the findings); and (5) the court failed to afford proper weight to mitigating circumstances.

For the reasons discussed below, we reject all five grounds Lish asserts. We discuss each in turn.

*1. Multiple prior convictions*

Lish contends there was no admissible evidence to support the trial court's finding he suffered "at least five, and maybe as many as seven or six prior DUI convictions." Among other counterarguments, the Attorney General responds that (1) the probation report contained information asserting that Lish admitted to being convicted seven times before his 2010 conviction, (2) that section 1170, subdivision (b)(4), explicitly authorized the court to consider the report as sentencing hearing evidence, and (3) that Lish forfeited any appellate challenge to the report by failing to object to it in the trial court.

We agree with the Attorney General on all three points. Lish opted to have a bench trial on the aggravating circumstances allegation that merged with the court's sentencing hearing. Section 1170, subdivision (b)(4), explicitly authorized the court to "consider" the report as a source of "further evidence" at the hearing. Accordingly, reliance on the probation report's information by the judge, acting as the trier of fact for the aggravating circumstances allegation, amounted to reliance on unauthenticated hearsay evidence that required an objection to preserve the issue for appellate review, and more fundamentally for the trial court's response. (*People v. Rogers* (1978) 21 Cal.3d 542, 548; Evid. Code, § 353; see *People v. Scott* (1994) 9 Cal.4th 331, 353, fn.

10

16 [disapproving of case law proposition that "the trial court is solely responsible for any sentencing error"].)[2] Lish's first challenge does not demonstrate a ground for reversal.

### 2. *Threat of great bodily harm*

Next, Lish contends there was insufficient evidence of a threat of great bodily harm because the "underlying incident did not involve another vehicle, any victims, any damage to public property, or even a moving violation." The argument fails at its premise because it depends on viewing the trial evidence in a light most favorable to the party that did not prevail. (*People v. Smith* (2005) 37 Cal.4th 733, 738–739 ["'"[W]e must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence"'"].)

Lish also contends there was "no substantial evidence of a vehicle collision" (capitalization omitted), but trial testimony by what the trial court believed to be a credible witness negates the contention. As noted above, that witness testified he heard a collision and then witnessed Lish exit his vehicle with two flat tires pinned next to a curb. (See *People v. Story* (2009) 45 Cal.4th 1282, 1296 [appellate court reviews "'the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid

---

[2] In his reply brief, Lish contends that to the extent his trial counsel forfeited any of his appellate arguments, Lish received unconstitutionally ineffective assistance of counsel. (See *People v. Myers* (2007) 148 Cal.App.4th 546, 551–552 [lack of evidentiary objection can support ineffective assistance argument].) However, we "indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance" (*People v. Dennis* (1998) 17 Cal.4th 468, 541) and "'"[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266– 267 (*Mendoza Tello*).) We express no opinion on Lish's ineffective assistance contention.

value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt'"].) And actual bodily injury is not required to establish the threat of it. (CRC, rule 4.421(a)(1) [listing both "great bodily harm" and "threat of great bodily harm"].)  Lish's second challenge does not demonstrate a ground for reversal.

### 3. *High degree of callousness*

Next, Lish contends there was insufficient evidence of acts showing a high degree of callousness.  He cites to two appellate opinions that adopted dictionary definitions of "callousness" (*People v. Nevill* (1985) 167 Cal.App.3d 198, 206 ["implying cold bloodedness or unfeeling"]; *People v. Esquibel* (2008) 166 Cal.App.4th 539, 558 ["insensitive; indifferent; unsympathetic"]) and argues the facts here did not go beyond those "inherent in the statutory definition of the crime[s]" he committed.

We take no issue with adopting a plain language meaning of the words used in CRC, rule 4.421 and agree more with the *Esquibel* definition of the two presented.  But our agreement with the general proposition is unhelpful to Lish here because his argument fails for, again, insisting on viewing the trial evidence in a light most favorable to him.  (*People v. Smith, supra*, 37 Cal.4th at pp. 738–739.)  For example, he asserts the trial evidence showed he "was concerned enough for the safety of other motorists that he walked home to retrieve his mother's car and parked it behind his truck so that he could use her hazard lights to warn others of the possible danger from his disabled truck."  Lish elaborates in his reply brief that he "was not speeding, he didn't run a red light, he wasn't involved in a traffic collision, he did not injure anyone, and he did not damage any property.  What he did was consume alcohol and drive his truck to his residential street late at night when no one else was driving on this street."  These characterizations of the facts do not support a conclusion the trial court misunderstood the plain language meaning of callousness.

Lish insists  "[t]his is nothing more than a DUI with a high [BAC] with any callousness being inherent in the crime itself" and that "[t]herefore, there isn't substantial

12

evidence to support the trial court's finding that there was a high degree of callousness in [his] actions." Lish's continued failure to acknowledge an alternative view of his conduct demonstrates the flaw in his reasoning. Neither the elements of count 1 or count 2 required Lish to reach a 0.30 percent BAC and neither count required him to have suffered the number of prior drunk driving convictions the trial court discerned from the record presented to it. Accordingly, the facts the court relied on for its aggravating circumstances finding were not inherent in the crimes he was charged with committing. Lish's third challenge does not demonstrate a ground for reversal.

### 4. *Dual fact bar*

Next, Lish asserts the trial court violated the dual fact bar by using his BAC percentage for both the court's aggravating circumstances findings and "as the factual basis for finding [an] enhancement true under Vehicle Code section 23538, subdivision (b)(2)." The statute applies to first-time offenders (*ibid.* ["The court shall refer a first offender whose blood-alcohol concentration was 0.20 percent or more . . . to participate . . . in a licensed program that consists of at least 60 hours of program activities"]), which Lish undisputedly was not. More fundamentally, Lish has not demonstrated what sentencing effect the BAC allegation finding created and we discern none from the record. In other words, while it is true the jury found true the BAC allegation, neither the record nor the law support his assertion that the finding triggered an enhancement.

Lish contends the trial court's use of "at least five, and maybe as many as seven or six prior DUI convictions" also violated the dual fact bar. The contention is premised upon an interpretation of the five priors as including his 2010 conviction, which served as an enhancement because it is what elevated Lish's 2019 drunk driving to a felony violation, based on Vehicle Code section 23550.5, subdivision (a)(2).

Lish's argument fails for two reasons. First, given the probation report that the trial court relied on contained information demonstrating seven prior convictions *predating* his 2010 conviction, adopting Lish's view of the record would require us to

13

presume against the correctness of the court's ruling. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 ["If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding"].) Second, the argument fails on the more fundamental ground of forfeiture, which exists to encourage parties to raise problematic aspects of a court's ruling at the earliest opportunity and to discourage parties from attempting to prevail on appeal based on silence in the trial court. (*People v. Rogers, supra*, 21 Cal.3d at p. 548.)[3] Lish's fourth challenge does not demonstrate a ground for reversal.

### 5. *Mitigating circumstances*

Finally, Lish asserts the trial court erred by failing to consider mitigating circumstances that supported an imposition of a middle term instead of the upper imposed. We presume the court considered all of the information that had been presented for its decision, including the probation report. (*People v. Weddington* (2016) 246 Cal.App.4th 468, 492 ["On appeal, we presume that the trial court followed established law and thus properly exercised its discretion in sentencing a criminal defendant"].) Indeed, the court explicitly mentioned information from the report that was favorable to Lish, as quoted earlier and cited to in his own appellate briefing.

Lish has not pointed us to anything in the record affirmatively supporting a conclusion that the trial court disregarded material information favorable to him. (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1637 [generally, "unless the record affirmatively reflects otherwise, the trial court will be deemed to have considered the relevant criteria, such as mitigating circumstances, enumerated in the sentencing rules"].) By themselves,

---

[3] We again note Lish's reply brief contention that, to the extent his trial counsel forfeited any of his appellate arguments, he received unconstitutionally ineffective assistance of counsel. Again, we reject the claim on appeal because, given the record, it is more appropriately suited for a habeas corpus proceeding. (*Mendoza Tello, supra*, 15 Cal.4th 264, 266–267)

merely debatable points (like how much weight certain information should have been given) do not demonstrate an abuse of discretion. (See *People v. Johnson* (2022) 12 Cal.5th 544, 605–606.) Accordingly, Lish's fifth and final challenge does not demonstrate a ground for reversal.

## DISPOSITION

The judgment is affirmed.


DELANEY, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.