[Crim. No. 39984. Second Dist., Div. One. Dec. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL LEROY WAGNER, Defendant and Appellant.

**COUNSEL**

Mary J. Madsen, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REESE, J.***—

## I

### INTRODUCTION

This is an appeal from the judgment rendered against appellant on March 18, 1981, in Los Angeles Superior Court committing him to state prison for 13⅔ years after he was found guilty by a jury of 10 counts of robbery and by the court of 2 counts of being an ex-felon in possession of a concealable firearm.

Appellant contends that his Penal Code Section 1538.5 motion should have been granted since the warrantless intrusion into his residence was for law enforcement purposes and not parole administration. He also contends he was denied a fair trial because the prosecution was allowed to control the course

*Assigned by the Chairperson of the Judicial Council.

of the trial in a manner which prevented him from having adequate opportunity for cross-examination and evidence presentation; the trial court improperly restricted presentation of pertinent medical evidence and the informant's identity was not disclosed.

## II

## PROCEDURAL HISTORY

On the night of June 26, 1979, the bartender at the Gaslight Bar in Hollywood was robbed at closing time by an unmasked gunman. On the night of July 3, 1979, the bartender and nine patrons of the Fox Fire Room were robbed at gunpoint by a masked robber. Following these events, a 13 count information was filed against appellant in Los Angeles Superior Court, alleging 11 violations of section 211, Penal Code (robbery) and 2 violations of section 12021, Penal Code (ex-felon with firearm).

During the course of the trial court proceedings, appellant's counsel made a section 995 motion, a section 1538.5 motion, a motion to compel disclosure of informant, and a motion for an *in camera* hearing on the issue of disclosure.

The section 995 motion was granted as to one of the counts, the motion to compel disclosure of informant, for an *in camera* hearing, and the section 1538.5 motion each in turn were denied. A petition for writ of mandate to compel disclosure of informant was denied by postcard on June 3, 1980. Petition for hearing in the Supreme Court was also unsuccessful. The prosecution later consented to an *in camera* hearing which was held on December 16, 1980. Informant disclosure was again denied.

## III

## STATEMENT OF FACTS

For our purposes the following summarization of facts will suffice:

During the month of June 1979 parole agent Robert Meeks received several phone calls from a reliable undisclosed informant advising him that his assigned parolee (appellant) was in possession of a firearm and was committing robberies in the Hollywood area of Los Angeles. Agent Meeks contacted investigator James Bosse of the Los Angeles Police Department inquiring as to whether he had knowledge of any robberies occurring which fit appellant's "prior established robbery pattern." Pursuant to Meeks' request, Bosse conducted a photo lineup resulting in appellant being identified as a suspect in two robberies at the Gaslight Bar in Hollywood on June 26, 1979. Agent Meeks

held several meetings and consultations with investigator Bosse, parole agent James Friesel and state special agent W. H. Damerell of the Department of Corrections, Special Services Unit, concerning the reported activities of appellant. On the morning of July 5, 1979, accompanied by Friesel, Bosse, another investigator and two uniformed police officers, Meeks proceeded to the home of appellant for the purpose of arresting him.

Meeks and Bosse went to the front door, Meeks knocked on the door. Appellant asked who it was. Meeks identified himself, adding, "I would like to talk to you, will you open the door?" Appellant opened the door. Meeks told appellant he was under arrest and placed him in custody. Meeks and the other officers and agents searched the apartment, discovered the weapon in question and a large grocery bag in a closet containing numerous wallets, credit cards and other forms of identification. These items were later identified as having belonged to patrons of the Fox Fire Room, a North Hollywood bar which was robbed on the night of July 3-4, 1979. They and the weapon are also the subjects of the section 1538.5 motion which appellant contends was wrongfully denied by the trial court.

One of the prosecution witnesses at appellant's trial was his former wife, Myrna Wagner. Although the parties married in 1976, they did not commence living together until April 1, 1979, due to appellant's incarceration. She testified that appellant constantly carried a handgun which she had in the home prior to his living with her. She asserted that on the night of July 3, 1979, she was a passenger in appellant's truck being driven by him away from the Silverlake home of her son and daughter-in-law after a social visit. She testified the appellant drove to North Hollywood; parked the truck; in her presence placed a cloth headgear over his head, a bandana across his face, gloves on his hands; and removed the gun from his rear pocket where he customarily carried it. He inquired of Myrna if she could see his hair and then departed with a large empty paper bag and the gun in his hands. She stated that after approximately five minutes he returned with the bag and upon arriving home sorted out the contents consisting of an assorted number of wallets, credit cards, purses, identification cards. Myrna stated that the next day, July 4, 1979, she accompanied appellant to Michael's Shoe Store on Wilshire Boulevard in Beverly Hills where he purchased three pairs of boots using one of the credit cards.

Witnesses Charles David Rehman, Knute Schesel, Wayne Smith, Alphonse Trizzino and Fred Marlin each testified they were in the Fox Fire Room, a bar in North Hollywood on the night of July 3-4, 1979, when it was robbed, had certain articles and cash taken from them by an armed male, and that they had received the articles, belonging to them and others from the arresting and investigating officers. None of the witnesses were able to positively identify appellant as the perpetrator. They did describe facial mask, head covering, the paper bag and gun as Myrna described.

Witness Rehman, the manager of the Fox Fire Room on duty the night of the robbery described the motions of the perpetrator in bending on his left knee to place money in the paper bag.

Witness Lloyd Howe testified to being the bartender on duty at the Gaslight Bar in Hollywood on the night of June 26, 1979, when it was robbed about 2 a.m. Howe identified appellant as the perpetrator. He testified the appellant had been in the bar on two or three other occasions within the week prior to the robbery. He stated that the appellant was armed and took $680 from him. No other persons were in the bar at that time, and appellant's face was uncovered.

Appellant testified that he has been having difficulty since 1974 with his knees arising from injuries received in a motorcycle accident. He denied committing either of the robberies at the Gaslight Bar on June 26, 1979, or at the Fox Fire Room on July 3-4, 1979. He stated that he reinjured his right knee on June 23, 1979, when he fell down a flight of stairs, and that from that time until well past July 3-4, 1979, he was totally incapable of the unrestricted movements of bending, kneeling and stooping allegedly performed by the robber on either one or both of the occasions. He stated he could walk only with great difficulty and pain during the period in question. He visited Dr. Robert W. Dewberry on June 24, 1979. No fracture was detected by X-ray. Appellant testified he had seen Dr. Alvin Turken, an orthopedic surgeon, on June 14, 1979, concerning his left knee and on June 26, 1979, concerning the right knee. Both doctors testified extensively on behalf of appellant and gave their conditional opinions as to his ability to bend, walk or kneel on the dates in question.

IV

DISCUSSION

A. *Motion to Suppress*

■ Was it error to deny appellant's motion to suppress? We think not for the following reasons:

(1) At the time of the search by the parole agents and police officers of appellant's home, he was on parole. As a parolee, he was constructively a prisoner under the legal custody of the Department of Corrections. For the purpose of maintaining the safeguards accompanying his status, the authorities may subject a parolee, his home and his effects to such constant or occasional inspection and search as may seem advisable to them, and neither the United States Constitution, Amendment IV, nor the California Constitution, article I,

section 19, block that scrutiny. (*People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 150 [40 Cal.Rptr. 100]; *People* v. *Howard* (1978) 79 Cal.App.3d 46, 49 [143 Cal.Rptr. 342].)

(2) One of the conditions of appellant's parole was: "You and your residence and any property under your control may be searched without a warrant by any agent of the Department of Corrections or any law enforcement officer." We find this condition to be valid pursuant to the holding in *People* v. *Mason* (1971) 5 Cal.3d 759, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630], and *People* v. *Howard, supra,* 79 Cal.App.3d 46, 49.

(3) It is well established that a parole agent may, if he deems it necessary and advisable, enlist the aid and assistance of law enforcement officers in carrying out a permitted and justified search. (*People* v. *Quilon* (1966) 245 Cal.App.2d 624, 626 [54 Cal.Rptr. 294], and cases there cited.)

We find in the instant case that Parole Officer Meeks acted appropriately and prudently in requesting Officer Bosse to conduct a photographic lineup using appellant's photograph after he (Parole Office Meeks) received information that appellant was committing robberies, and that he also acted reasonably and prudently in requesting the aid and assistance of police officers in arresting appellant and in searching his home. Our careful examination of the record reveals that the search and the arrest were lawful and legitimate parole administration functions and not mere law enforcement duties and actions. We find no unreasonable or unconstitutional invasion of appellant's rights.

We uphold the denial of the motion to suppress.

### B. *Use of Appellant's Ex-wife as a Witness*

(1) According to the record, the last witness called by the prosecution in their case in chief was the former wife of appellant, Myrna Wagner. The prosecution advised the court and appellant's counsel on the morning of the day he called Myrna as a witness of his intention to do so. He stated on January 14, 1981, that he had not advised appellant's counsel of the intended use of Myrna as a witness because she had steadfastly refused to commit herself to testify until the previous day. The prosecutor further asserted that he and the witness felt that the witness' life might be in danger if it were known beforehand that she was going to testify and that he could not make arrangements for her safety overnight on such short notice.

No complaint is made by appellant of violation of the spousal or marital communications privilege having taken place by virtue of Myrna's testifying. Nor

was any objection made to her testifying prior to the commencement of her testimony on direct. Appellant's counsel did request that the testimony of Myrna before the jury not commence until the following morning and the request was denied.

(2) The record discloses that on January 26, 1981, after the People had rested their case and just prior to appellant commencing his defense, a motion was made to dismiss the action as a sanction for what appellant deemed to be a violation of a discovery order issued in Division 40 of the Los Angeles Municipal Court. Appellant's counsel predicated his motion upon his allegation that it was improper for the prosecution to have secreted or concealed Myrna as a possible witness during the 24-hour period prior to her testifying. Respondent's counsel stated that the reason for the nondisclosure was the fear by the witness for her life and safety. The court, after observing that the witness appeared to be frightened and fearful, denied the motion.

We find nothing in the record to indicate that appellant objected to Myrna's testimony on the basis that it denied him a fair trial and right to counsel because of inadequate time for preparation. This is an issue now being raised for the first time. It is well established that new issues cannot be raised for the first time on appeal. (*People* v. *Rogers* (1978) 21 Cal.3d 542 [146 Cal.Rptr. 732, 579 P.2d 1048].) Although adequate grounds may exist for disposing of this issue due to it having been first raised on appeal, we prefer to first examine the prejudices, if any, suffered by appellant by his ex-wife (Myrna) testifying before doing so.

(3) Assuming this issue is properly before us, we must determine whether appellant's rights to a fair trial and to counsel were actually prejudiced. (*People* v. *Schindler* (1972) 23 Cal.App.3d 369 [100 Cal.Rptr. 110].) The record shows that appellant's counsel interviewed the ex-wife extensively prior to his cross-examination of her; that this interview was taped, and that counsel had ample opportunity to review the contents of the tape. The record further reveals that appellant was in contact by telephone with Myrna within two weeks prior to the trial and that he knew she might testify. The victims of the Fox Fire Room robbery identified the wallets, credit cards and other personal property taken from them on the night of July 3-4, 1979. These articles were found in appellant's closet. There was substantial evidence against him without his wife's testimony. No showing was made that a verdict more favorable to appellant would have been reached had his wife not testified. The burden of so showing is upon appellant. He has not met it. Therefore, we find no error.

Appellant further urges that the court erred in not assisting appellant in obtaining the Silverlake address of Myrna's son with whom appellant and his ex-wife visited on the night of the Fox Fire Room robbery.

This issue is not properly before us, it being raised for this first time now. The record divulges no request for such assistance during the trial. Therefore, we find this issue meritless. (*People* v. *Schindler, supra,* 23 Cal.App.3d 369; *People* v. *Rogers, supra,* 21 Cal.3d 542.)

### C. *Exclusion of Medical Evidence*

■ Appellant urges his right to fair trial was impermissibly abridged by the trial court's refusal to admit the medical records of his physician (Dr. Turken) into evidence and by the trial court's refusal to allow appellant to put on testimony interpreting appellant's postarrest medical records from Los Angeles County Medical Center.

A careful reading of the transcript of the trial proceedings discloses that two physicians, Dr. Robert W. Dewberry, a radiologist, and Dr. Alvin Turken, an orthopedic surgeon testified extensively with reference to the condition of appellant's injured knee at or about the time, or very near the time, of the injury itself. Dr. Dewberry testified no fracture was detected by X-ray. Dr. Turken testified that in his opinion there was no fracture, but that in his opinion injuries other than a fracture, particularly an undisplaced fracture could be more disabling. Dr. Turken demonstrated for the jury by way of clarifying his testimony. We find that the trial judge properly and prudently exercised her discretion under section 352 of the Evidence Code in excluding the introduction of Dr. Turken's records in that they were not used to refresh his recollection, and contained confusing medical terminology as well as extraneous material that could have been confusing and misleading to the jury.

We further find the trial judge's ruling denying receipt into evidence of the Los Angeles County USC Medical Center records pertaining to appellant to be proper under section 352 of the Evidence Code. We concur with the trial judge's statement on the record: "I think it does raise far more problems than it might solve. And I don't feel the defendant is being deprived or his position in any way prejudiced in view of the fact that we have had two other doctors that have testified. And both of whom saw the defendant at a really more pertinent time period than anyone involved in this treatment later."

*People* v. *Wein* (1977) 69 Cal.App.3d 79, 90 [137 Cal.Rptr. 814], states as follows: "The trial court is vested with discretion in admitting or rejecting proffered evidence and its decision will not be reversed on appeal unless there is a manifest abuse of that discretion resulting in a miscarriage of justice." (Citing: Cal. Const., art. VI, § 13; Evid. Code, §§ 352, 353, 354.)

## D. *Denial of Motion to Disclose Informant's Identity*

■ Appellant submits that the informant was a material witness and the trial court's denial of disclosure deprived him of a fair trial. We disagree.

In *People* v. *McCarthy* (1978) 79 Cal.App.3d 547, 553-555 [144 Cal.Rptr. 822], the court states as follows: "Appellants contend that the court must disclose the identity of an informer who was a material witness on the issue of guilt, regardless of whether the informer's testimony would incriminate or exculpate a defendant in a criminal action. We disagree.

"When a defendant seeks information which might lead to the disclosure of the identity of a confidential informant, the public entity is entitled to invoke the privilege of nondisclosure of the identity of an informer under Evidence Code section 1041. Once that privilege has been invoked, a hearing is held with defendant and his counsel present to determine whether the informer might be a material witness on the issue of guilt. (See *People* v. *Coleman* (1977) 72 Cal.App.3d 287, 295 [139 Cal.Rptr. 980].) In 1969, the Legislature added subdivision (d) to Evidence Code section 1042, providing that the prosecution may request an *in camera* hearing on the issue of disclosure of identity.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"However, when an *in camera* hearing has been held and the trial court has reasonably concluded, as in the instant case, that the informant does not have knowledge of facts that would tend to exculpate the defendant, disclosure of the identity of the informer is prohibited by Evidence Code section 1042, subdivision (d), since the public entity has invoked the privilege pursuant to section 1041."

In the case at bench at the request of the prosecution an *in camera* hearing was held on December 16, 1980, before a judge of the trial court. The judge; the informant; Mr. Meeks, the parole officer; and the assistant district attorney, Mr. Giss, were present. The *in camera* hearing was conducted pursuant to section 1042, subdivision (d) of the Evidence Code. After the hearing, defense counsel in open court was given generous and extensive opportunity to interrogate the judge who conducted the *in camera* proceedings. The record reveals that the hearing judge (Leslie W. Light) distinctly stated his conclusion that the informant had no knowledge of facts which would tend to exculpate the defendant.

We have carefully reviewed the transcript of the *in camera* hearing and concur in the conclusion of the hearing judge.

## V

## Disposition

The judgment is affirmed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.