[No. F008391. Fifth Dist. Apr. 12, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE ARCHERD, Defendant and Appellant.

**COUNSEL**

Howard J. Berman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jane N. Kirkland and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

### STATEMENT OF THE CASE

**BEST, J.**—Defendant was convicted by jury of one count of robbery (Pen. Code, § 211) and one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). The jury also found that defendant personally used a deadly and dangerous weapon in the commission of the robbery (Pen. Code, § 12022, subd. (b)). At a hearing on the bifurcated issues, the trial court

found that defendant had suffered a 1977 prior serious felony conviction (Pen. Code, § 667) for robbery and had served two prior separate prison terms (Pen. Code, § 667.5) for a 1977 burglary and a 1981 sale of marijuana. Defendant was sentenced to state prison for a total unstayed term of 11 years.

In an unpublished opinion filed by this court on September 25, 1986, in *People* v. *Robert L. Archerd,* F005480, the judgment was reversed and the cause remanded to the trial court for the limited purpose of holding a hearing on the issue relating to the admissibility of the prior felony convictions for impeachment purposes. The trial court was directed to follow the remand procedure outlined in *People* v. *Collins* (1986) 42 Cal.3d 378, 393-395 [228 Cal.Rptr. 899, 722 P.2d 173], paragraphs 5 and 6.

On February 26, 1987, the trial court held a *Collins* remand hearing as directed by this court's opinion. First, defendant's motions for the original trial judge, who had since retired, to conduct the hearing and for new trial were denied. Defendant was sworn and testified in camera. Thereafter, the court took judicial notice of defendant's prior convictions, found all to be crimes of moral turpitude and none to be remote, but decided it would have excluded the prior robbery conviction because it was a duplicate of one of the instant offenses. However, the court also found that because the case against defendant was very strong, the error in ruling admissible the prior robbery conviction would not have changed the result of defendant's trial. The court then ordered the judgment of conviction reinstated.

Judgment was then pronounced. Probation was denied. Defendant was sentenced to state prison for a total unstayed term of eleven years—mid term of three years for the robbery, one year for the weapon use, five years for the prior serious felony conviction and two years for the two prior prison terms—less one hundred sixty-five days for time served and statutory credit. The upper term of four years was imposed on the aggravated assault, then stayed pending successful completion of the sentence on count I. A restitution fine of $100 was also imposed.

On this appeal defendant contends it was prejudicial error for a judge other than the original trial judge to conduct the *Collins* hearing on remand, and, alternatively, that the trial court erred in failing to read and consider the reporter's transcript of the original trial before making the *Collins* rulings. We reject both contentions and affirm the judgment.

## STATEMENT OF FACTS[1]

During the early morning hours of November 11, 1984, at approximately 2:30 a.m., defendant entered the premises of a Lucky 7 market in Bakersfield, California. The clerk on duty at that time was Sheminder Singh (Singh). Defendant, who had twice before entered the market during the previous two to three hours,[2] heated a burrito in the store's microwave oven and brought it to the store's check-out counter. Defendant was dressed in a T-shirt, blue jeans, brown boots, an orange jacket and a baseball hat. Defendant, who weighed approximately 135 pounds and was between 5 feet 7 inches and 5 feet 9 inches tall, wore a beard and mustache. As Singh operated the cash register, defendant walked behind the counter and placed a knife he held in his right hand against Singh's stomach and ordered Singh to "open the register." The knife appeared to have a wooden handle and a blade approximately five to six inches long. As defendant held the knife in his right hand pressed against Singh's stomach, he removed approximately $20 to $25 from the cash register with his left hand. Singh attempted to grab defendant's right hand and succeeded only in cutting the index and middle fingers of his left hand. Defendant exited the market and departed to the left toward Niles Street.

Bakersfield Police Officers Don Brady (Brady), William Rector (Rector), and Officer Aus were in the vicinity of an alley directly north of the market at approximately 2:30 a.m. to 2:40 a.m. during the evening in question. The officers were investigating a report of a disturbance near the market when they observed a small white pickup truck parked in the middle of the alley behind the market. As the officers were looking, the headlights of the pickup truck, whose parking lights already were on, were activated and the truck moved away west down the alley. Almost simultaneously, the officers observed defendant running east through the alley, away from the market and in their direction. Brady drove around the alley in order to intercept defendant while Rector pursued defendant on foot. Rector observed defendant run out of the alley and crouch, near the middle and on the driver's side, next to a pickup truck parked in a nearby apartment parking lot. Defendant was crouched next to the truck for no more than five seconds, and neither Rector nor Brady could tell what defendant was doing with his hands. As Rector ran to within 10 to 15 feet of defendant and yelled "Stop, police"

---

[1] The facts are taken from our opinion in *People* v. *Robert L. Archerd,* F005480.

[2] Defendant first entered the store that evening close to midnight and placed a burrito and bottle of wine on the counter for purchase. Singh began to register the purchase when defendant, checking his pockets, announced that he had forgotten his wallet and departed. Defendant returned some 30 minutes later and again proceeded to purchase a burrito and a bottle of wine. Once again defendant checked his pockets, stated that he only had $1, and left indicating that he intended to obtain additional funds from his wife. In each case there were other customers in the store.

twice at defendant, defendant ran away from the truck. Both officers were dressed in police uniforms, and Brady was driving a marked police unit. As defendant ran, he removed a jacket and cap and discarded them some 30 to 40 yards away from the pickup truck where he had crouched. Defendant entered an apartment complex in the 800 block of Niles Street and, as he was confronted by Officer Rector, threw back his right arm with his hand closed in a fist and appeared ready to strike Rector. Rector and Brady (who had caught up to defendant and Rector) each drew their service batons and struck defendant twice above the waist. The officers subdued and hand-cuffed defendant and began to walk defendant to their patrol car. Defendant twisted free of Rector's grasp and ran away. Brady and Rector pursued and caught defendant, pushed him into a fence to knock him off balance, and then escorted defendant to their patrol car. After the officers had returned to their patrol car with defendant, they received a communication over the car radio and learned of the incident at the Lucky 7 market. Brady responded by contacting the police department communications center and within five to ten minutes, Singh had been escorted to the patrol car in the company of Officer Frank Woolridge (Woolridge). After defendant had left the Lucky 7 market, Singh had called the authorities and given a description of the perpetrator. Woolridge had responded to the call and contacted Singh. Singh identified defendant, who was in the officers' custody, as the perpetrator of the robbery. Defendant was not wearing a cap or jacket when identified by Singh. The officers subsequently recovered an orange jacket and a baseball cap which they identified as being the cap and jacket defendant had removed while being pursued. The officers recovered a kitchen knife from the bed of the pickup truck next to which defendant had crouched while being pursued by Officer Rector. Singh testified during trial that the jacket and baseball cap, which the officers had recovered from the area where defendant had been observed to discard a jacket and cap, as well as the knife recovered from the pickup truck, appeared to be the same jacket, baseball cap and knife which had been in the possession of his assailant.

Woolridge interviewed defendant at the police station after defendant had been advised of his *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights and agreed to waive those rights. Defendant stated to Woolridge that he had entered the Lucky 7 market to purchase a burrito and was the only customer in the store when the clerk suddenly began to scream for some unknown reason. Defendant panicked and fled the store, running east until he was confronted and apprehended by police officers. Woolridge informed defendant that Singh had identified defendant as the perpetrator, and defendant responded by stating he "would only come straight" or tell the truth if advised to do so by an attorney.

## DISCUSSION

### I. MAY A JUDGE OTHER THAN THE ORIGINAL TRIAL JUDGE CONDUCT A COLLINS HEARING?

■ Defendant contended below, and claims on appeal, that he was entitled to a *Collins* hearing conducted by the original judge who heard the evidence at trial. Defendant contends that footnote 20 in *People v. Collins, supra,* 42 Cal.3d at page 394, indicates the Supreme Court contemplated that the judge making the *Collins* ruling should be the judge who heard the original trial. Footnote 20 appearing on page 394 of the *Collins* opinion provides in pertinent part: "The sequence of these two hearings—i.e., the offer of proof before the discretionary ruling—serves the interest of fairness. Inasmuch as motions to exclude prior convictions for impeachment purposes are often made *in limine,* trial courts usually rule on such motions without knowing the specifics of either the prosecution's case or the defense. But in the present context of reversal and remand the trial court will always have been exposed to the prosecution's case—and know it persuaded the jury—before making the delayed *Castro* ruling we now require. In some cases that knowledge might unconsciously affect the outcome. The best that can be done to redress the balance is to ensure that the trial court at least has the benefit of the defendant's offer of proof before making its ruling."

While the foregoing appears to support defendant's contention that the Supreme Court contemplated the trial judge would conduct the *Collins* hearing, it does not indicate that the court intended to make that circumstance a mandatory requirement of the remand procedure. As the Supreme Court notes, motions to exclude prior felony convictions are usually ruled on without the trial court knowing the specifics of the evidence on either side. By its observation that knowledge of the prosecution's evidence might in some cases unconsciously affect the trial court's ruling, the Supreme Court implies that the absence of such knowlege could be favorable to the defendant. In our view, it would be incongruous to hold that a trial judge could quite properly rule upon such motions *in limine* without knowing the specifics of either the prosecution's case or the defense, and to hold on the other hand that only the original trial judge could properly rule on the same matter upon a *Collins* remand.

Generally, a criminal cause is before the court, not an individual judge of that court, and the jurisdiction which the judge exercises is the jurisdiction of the court, not of the judge. (*People v. Osslo* (1958) 50 Cal.2d 75, 104 [323 P.2d 397]; but see *People v. Arbuckle* (1978) 22 Cal.3d 749, 756 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171] [stating the general principle that whenever a judge accepts a plea bargain and retains sentencing

discretion under the agreement, an implied term of the bargain is that the sentence will be imposed by that judge].) While in some instances it may be the better practice to have the original judge hear a posttrial matter, it is not error for another judge of the court to perform that function. (*People* v. *Cole* (1960) 177 Cal.App.2d 458, 460 [2 Cal.Rptr. 190] [a judge who denied probation and imposed sentence was not the same one who tried the case].) Moreover, when the first judge has retired, he is not in a position to act on the posttrial motion unless he has been specifically directed to resume his judicial functions by assignment of the Chief Justice. (*People* v. *Clifton* (1969) 270 Cal.App.2d 860, 862 [76 Cal.Rptr. 193].)

In the early case of *People* v. *Hobson* (1861) 17 Cal. 424, the Supreme Court was faced with a similar problem in that a motion for new trial was passed on by a court composed of different members from those before whom the trial was had. The court stated, "If, from resignation or other such cause, one of the Justices after a trial should not be able to sit on the motion for a new trial, unquestionably this would not prevent the matter from being passed upon by another Justice acting in the place of the one thus incapacitated. (*Id.* at p. 429.)

In the more recent case of *People* v. *Holzer* (1972) 25 Cal.App.3d 456 [102 Cal.Rptr. 11], the court disposed of the issue as follows: "Defendant's final contention is that his conviction must be reversed because the judge who presided over his trial died before hearing defendant's motion for a new trial. The argument is that, unlike an appellate court, the trial judge hearing a motion for a new trial is entitled to weigh the evidence. Since the judge who ruled on defendant's motion was not in a position to consider the demeanor of witnesses, defendant was in effect denied his right to have the evidence reweighed. (Pen. Code, § 1181, subd. 6.)

"We cannot agree. Defendant had the benefit of a full jury trial. He has advanced no reason why the verdict is contrary to the law or evidence, and we see none. It is interesting to note that the points and authorities in support of motion for new trial filed in the trial court raised only two grounds: one—not raised on appeal—was that a delay in sentencing required a new trial; the other was the circular argument raised here, that the motion must be granted because it could not be properly heard. In any event, there is no error in having another judge hear and rule on the motion for a new trial when the trial judge dies before the motion can be heard. (*People* v. *Clifton*, 270 Cal.App.2d 860, 862 [76 Cal.Rptr. 193].)" (*Id.* at pp. 463-464.)

■ Here, as in *Hobson* and *Holzer*, defendant merely complains of the procedure and fails to affirmatively show how or in what manner he may

have been prejudiced. In the absence of such a showing, he has failed to meet the requirements for reversal established by article VI, section 13 of the California Constitution, which provides in pertinent part, "No judgment shall be set aside . . . for any error as to any matter of procedure, unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

## II. DID THE TRIAL COURT ERR IN FAILING TO READ AND CONSIDER THE REPORTER'S TRANSCRIPTS OF THE ORIGINAL TRIAL?

■■■ In our previous opinion remanding this case for a *Collins* hearing, this court directed the trial court to conduct a hearing following the procedure set forth in *People* v. *Collins, supra,* 42 Cal.3d at pages 393-395, paragraphs 5 and 6. Such a hearing was held but improperly so, according to defendant, because the trial court failed to read and consider the transcripts of the original trial.

Defendant provides no citation to authority for the requirement that a substitute judge read and consider the transcripts of the original trial in a situation such as this or similar to it. Our research has failed to disclose any such authority.

Moreover, here the defendant neither requested such a review nor objected to the adequacy of the documents the court did read and consider.

Paragraph 5 on pages 393-394 of the *Collins* opinion, to which the trial court was referred in conducting the remand hearing, provides two broad directives for doing so. First, the trial court should direct the defendant to make an offer of proof. The court should permit the prosecutor to serve and file a "brief summary" of the evidence introduced at trial. In lieu of the brief summary of evidence where the defendant's offer is made in camera, the prosecutor may elect to participate in the hearing upon making certain stipulations not relevant to the instant case. (*People* v. *Collins, supra,* 42 Cal.3d at pp. 393-394.) Thus, plaintiff points out, nothing in the language of *Collins* suggests that the trial court is required to consider transcripts from the original trial. Plaintiff also contends the short statement of facts submitted by the prosecutor in this case was in compliance with the Supreme Court's authorization of a "brief summary."

Returning to defendant's contention, he now argues that the prosecutor's statement was too short for the court to assess adequately the issue of prejudice. The defense, however, never pointed out any significant omissions from that statement which would have affected the outcome of the

remand procedure. Moreover, the defense was given advance notice that the court would be making its decision on the basis of defendant's offer of proof on the one side and the prosecutor's points and authorities and recitation of facts on the other. When the court asked whether it was to take any other notice concerning the trial, defense counsel had no comment and made no requests. The record does indicate that the trial court had the statement of facts contained in our earlier opinion by which this case was remanded to the trial court.

 It is a fundamental premise of appellate review that issues cannot be raised for the first time on appeal. (*People* v. *Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048]; *People* v. *Wagner* (1982) 138 Cal.App.3d 473, 480 [188 Cal.Rptr. 185].) By failing to object below on the ground now raised, plaintiff contends defendant has waived the issue. (*People* v. *Griffin* (1971) 18 Cal.App.3d 864, 871 [96 Cal.Rptr. 218].) In the absence of a proper request for the court to consider the transcripts or an objection to its failure to do so, defendant has waived his right to complain of the omission on appeal.

 Finally, there has been no showing in what way consideration of the transcripts would have aided defendant's cause. The synopsis of the evidence presented at trial showed that defendant had been identified by the victim of the robbery a short time after the incident occurred. Police officers saw defendant fleeing from the direction of the robbery scene. These officers also saw defendant discard distinctive looking clothing which was also subsequently identified as having been worn by the robber. The officers recovered the weapon used during the robbery from a location defendant had been near during his flight.

In contrast to plaintiff's case, defendant's offer supports the trial court's remark that "even Houdini, himself, would not have been able to get out of the web of circumstantial evidence that existed at the time of the robbery and the period of time shortly thereafter." The defendant's offer had, to paraphrase the court's words, no chance of changing the trial result.

It is noteworthy that this characterization of the evidence was neither disputed nor challenged by the defense below.

In short, given the particular circumstances of this case, there appears to have been no error committed by the trial court in failing to consider the trial transcripts before concluding that the error in admitting the robbery prior would not have changed the result of defendant's trial.

Finally, we have independently reviewed the trial transcripts and the offer of proof made by defendant at the in camera hearing and conclude that

it is not reasonably probable that a result more favorable to defendant would have occurred absent the error in admitting the prior robbery conviction. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## DISPOSITION

The judgment is affirmed.

Woolpert, Acting P. J., and Ardaiz, J., concurred.