[No. B081595. Second Dist., Div. Four. June 1, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT FRANCIS COREY, Defendant and Appellant.

■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■

## COUNSEL

Donald R. Wager for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert Carl Schneider, Assistant Deputy Attorney General, Richard L. Walker and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Robert Francis Corey appeals from the judgment (order granting probation) entered following a jury trial which resulted in his conviction of selling an unqualified, unexempt security (Corp. Code, § 25110) and selling a security by means of false statements or omissions (Corp. Code, § 25401).[1] Appellant contends that the trial court committed several instructional errors and erred. by excluding evidence regarding whether he intended to sell the security and whether he knew that the offering was fraudulent and that the promotional materials contained false and misleading statements.[2] Based on the recent case of *People* v. *Simon* (1995) 9 Cal.4th 493 [37 Cal.Rptr.2d 278, 886 P.2d 1271], disapproving *People* v. *Johnson* (1989) 213 Cal.App.3d 1369 [262 Cal.Rptr. 366], we reverse the conviction for violation of section 25401, remand for retrial and otherwise affirm.[3]

### BACKGROUND

This case arises under the Corporate Securities Law of 1968 (§ 25000 et seq.) and was instituted in response to financial losses suffered by Diana

---

[1] All statutory references are to sections of the Corporations Code.

[2] Appellant does not contest that Panda Resources International, Ltd.'s offerings violated section 25110.

[3] Pursuant to Government Code section 68081, we requested the parties submit supplemental briefing regarding *People* v. *Simon, supra,* 9 Cal.4th 493.

Cole after paying money to purchase an interest in a "Michael Jackson Board Game" (Game), a purported investment opportunity offered by Panda Resources International, Ltd. (Panda). In reaching her decision to invest, Cole relied on Panda's written and appellant's oral representations that Panda had exclusive rights to the Game and that a Michael Jackson Fan Club had agreed to purchase 200,000 game units. It was later discovered that Panda did not have rights to the Game and that no fan club had agreed to make such purchase.

On the ground that the charges against appellant under sections 25110 and 25401 were strict liability offenses, the prosecutor successfully brought a motion *in limine* to exclude evidence whether appellant received any advice from counsel or other persons regarding the legality of the offer and sale. The trial court also refused to allow appellant to testify whether he knew the investment scheme was fraudulent and whether he intended to sell the interest to Cole. It also refused several of appellant's proposed jury instructions bearing on his state of mind.

## THE FACTS

Appellant, a broker, was an assistant to Cole's account representative at the Paine Webber brokerage firm. Cole and appellant became close friends over a period of several months, during which time appellant resolved various problems concerning Cole's accounts at Paine Webber. Appellant, as a Paine Webber broker, also looked for good investments for Cole. She often followed his recommendations, and they spoke daily.

The last week of May 1990, Cole heard about the Game from appellant during a telephone conversation. Appellant advised her that he thought it was a great deal, indicated that a friend of his was in a position where he could see how much money was being made, and that it was one of the best deals he had ever seen.[4]

On Saturday, June 2, 1990, Cole and appellant met for lunch. Appellant gave her written information relating to Panda and a separate Paine Webber offering. The Panda documents, in a format which resembled a prospectus, indicated that Panda had been given exclusive rights to the Game and that the Michael Jackson Fan Club had agreed to purchase 200,000 units. Cole testified that these statements formed the basis of her decision to invest. Appellant further told her that the investment was a "no brainer" and that the fan club had already committed to the purchase, therefore, additional sales

---

[4]The reporter's transcript does not reflect whether Cole was testifying that appellant or his purported contact believed that the investment was "like the best deal he had ever seen."

would be pure profit. Appellant advised her he would not be getting a commission on the sale. She was enthusiastic about the investment, and appellant represented that if there were any investment units left, he would try to get her involved.

Appellant telephoned Cole on Sunday, June 3, 1990, advised that the Panda investment opportunity was available, and asked if she was still interested. She told him she was ready to sign papers. Appellant told her that she would acquire an equity interest of 1.75 percent in the Game profits. Later that day, appellant brought a Panda subscription agreement to Cole's residence. Appellant had already partially filled in the subscription agreement, and he completed the form in her presence. She signed it and gave appellant a check for $35,000, drawn on one of her Paine Webber accounts, made out to Panda.

Cole received a letter from Panda confirming her purchase of 1.75 units in its investment program. Enclosed was a promissory note that included the language, "Promissory Note and Stock Option." Because the promissory note did not reflect an equity interest in Game profits, Cole became upset and telephoned appellant. He told her he would resolve the problem and they took part in a three-way telephone conversation with Carlos Yanez. Yanez told her he was a lawyer representing Panda and he sent her new paperwork to resolve the problem.[5] Panda failed to make any expected payments to Cole.

The trial court disallowed questions directed toward ascertaining what appellant either knew or believed about the offering, indicating that such questions were irrelevant because the charges were strict liability offenses and the only issue was whether appellant had made the statements about the Panda investment and had conveyed the Panda literature containing those same representations to Cole.

Appellant was convicted of selling an unqualified, unexempt security (§ 25110) and selling a security by means of false statements or omissions (§ 25401). He first contends that the trial court erred in holding that the prosecution did not need to present evidence of his state of mind and lack of knowledge. Given the holding in the recent case of *People* v. *Simon, supra,*

---

[5]We recently decided the case of *People* v. *Yanez* (Cal.App.), where Mr. Yanez was prosecuted in connection with his activities in relation to these same offerings, including the Cole transaction.

9 Cal.4th 493, we must reverse his conviction for violation of section 25401.[6]

DISCUSSION

*Section 25401*

■    In *People* v. *Simon, supra,* 9 Cal.4th 493, the California Supreme Court held that section 25401, prohibiting untrue statements or material omissions in connection with the purchase or sale of a security, is not a strict liability offense.[7]

In *Simon,* the defendant, a tax preparer, sold to several of his clients promissory notes and interests in limited partnerships that had been formed to purchase, manage, and resell real property. Defendant believed that his preexisting relationship with the investors exempted these securities from the qualification requirements of the Corporations Code. Cash flow problems, arising after completion of these transactions, led to transfers of funds among the partnerships. The defendant was charged with selling unqualified, unexempt securities under section 25110 and, based on the transfers of funds, selling securities by means of false statements or omissions under section 25401.

Simon's defense to the section 25401 charges was that the cash flow problems were unanticipated and arose after completion of the sales transactions. The trial court ruled that section 25401 created a strict liability offense, instructing the jury that the actor's intent or knowledge at the time of a material representation was irrelevant, that only a general intent to commit the proscribed act was required, and that the section is violated when a later event makes a representation untrue. After judgment, the case was transferred to the California Supreme Court. (Cal. Rules of Court, rule 27.5.)

---

[6]Appellant repeatedly cites *People* v. *Keating* (Cal.App.) in support of various facets of his argument. As appellant acknowledges in his opening brief, the California Supreme Court granted a petition for review on September 30, 1993 (S033855). Thus, the case was superseded, and it is inappropriate for appellant to cite it as authority. (See *People* v. *Rogers* (1978) 21 Cal.3d 542, 547 [146 Cal.Rptr. 732, 579 P.2d 1048]; *Carraway* v. *Superior Court* (1981) 118 Cal.App.3d 150, 154, fn. 4 [172 Cal.Rptr. 453]; Cal. Rules of Court, rule 976(d).) Review was dismissed as improvidently granted and the cause remanded to the Court of Appeal on March 23, 1995. The case remains superseded. (Cal. Rules of Court, rules 29.4(c) and 976(d).)

[7]Section 25401 provides: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

The court noted that section 25401 itself does not expressly require knowledge of the false statement or omission as an element of the offense proscribed. It concluded that "[n]either the language and history of section 25540 [prescribing penalties for section 25401 offenses] nor reference to the federal law after which section 25401 was patterned resolves this question since violations of section 25401 may be the basis for administrative or civil, as well as penal, sanctions. In ascertaining legislative intent in this case we must look to the entire regulatory scheme of the Corporate Securities Law of 1968 [to determine where in the regulatory hierarchy a criminal violation of section 25401 falls]." (*People* v. *Simon, supra,* 9 Cal.4th at p. 509.)[8]

First, under section 25530, the Commissioner of Corporations may enjoin the proscribed conduct and, pursuant to section 25535, may seek a civil penalty of up to $2,500 for each violation of any provision, rule, or order. Because an enforcement action to enjoin future sales by means of false or misleading statements is designed to protect the public, the court concluded that "[t]he relatively small civil penalty authorized implies that administrative enforcement of section 25401 was permissible regardless of whether a violation or threatened violation of that section was a knowing violation." (*People* v. *Simon, supra,* 9 Cal.4th at p. 516.)

Second, section 25501 provides recovery of actual losses in a civil action by an injured investor but only if the offeror knew, or with reasonable care would have known, of the false or misleading statements by which the sale was made.[9]

The third level of enforcement, provided under section 25540, is criminal prosecution with the possibility of substantial fines and imprisonment upon conviction.

---

[8]At the time of these events, section 25540 provided: "(a) Except as provided for in subdivision (b), any person who willfully violates any provision of this law, or who willfully violates any rule or order under this law, shall upon conviction be fined not more than two hundred fifty thousand dollars ($250,000) or imprisoned in the state prison, or in a county jail for not more than one year, or be punished by both such fine and imprisonment; but no person may be imprisoned for the violation of any rule or order if he or she proves that he or she had no knowledge of the rule or order. [¶] (b) Any person who willfully violates Section 25400, 25401, or 25402 shall upon conviction be fined not more than two hundred fifty thousand dollars ($250,000), or imprisoned in the state prison for two, three, or five years, or be punished by both such fine and imprisonment." (As amended by Stats. 1988, ch. 1339, § 5, p. 4431.)

[9]As pertinent, section 25501 provides: "Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission."

The court noted that the penalties of section 25540 apply to criminal violations of "*any* provision of the Corporate Securities Law of 1968, including violations of rules or orders promulgated under that law or of which the violator had knowledge." (*People* v. *Simon, supra*, 9 Cal.4th at p. 509.) The court stated it hesitated "to assume that the Legislature intended that scienter be an element of every regulatory aspect of the Corporate Securities Law of 1968" but indicated that its reluctance was "tempered somewhat by recognition that the Legislature has now attached extremely heavy penalties to criminal violations of some provisions of the Corporate Securities Law of 1968." (*Id.* at p. 509, fn. 13.) Noting that a 1993 amendment to section 25540 increased the maximum fine for most violations to $1 million and the fine for violations of section 25401 and several other sections to $10 million, it indicated it generally presumed that the Legislature would not attach such a substantial penalty to a strict liability offense. (*People* v. *Simon, supra*, 9 Cal.4th at p. 509, fn. 13.)

The court concluded that the Legislature could not have intended to dispense with the element of scienter in creating this third tier of enforcement. (*People* v. *Simon, supra*, 9 Cal.4th at pp. 520-522.)[10]

In the instant case, the trial court, not having the benefit of the *Simon* decision, instructed the jury pursuant to CALJIC No. 4.36: "When the evidence shows that a person voluntarily did that which the law declares to be a crime, it is no defense that he did not know that the act was unlawful or that he believed it to be lawful." It further instructed, as requested by the People: "In regards to Corporations Code Sections 25110 and 25401, the doing of the act willfully is punishable as a crime. The intent with which the act was committed is immaterial to guilt. [¶] Proof that the defendant had an evil motive or guilty knowledge is not required. Moreover, evidence that a defendant acted in good faith is not a defense." It instructed the jury pursuant to CALJIC No. 1.20: "The word 'willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question. The word 'willfully' does not require any intent to violate the law, or to injure another, or to acquire any advantage."[11]

Under *Simon*, section 25401 now has been held to be other than a strict liability offense. The evidence at trial indicated that appellant made oral

---

[10]The court noted that *People* v. *Johnson, supra*, 213 Cal.App.3d 1369 had concluded that the California Legislature had not intended to make knowledge of the falsity of a statement an element of section 25401. The court criticized the *Johnson* result on the ground that it rested "principally on the language of section 25540" and had not taken the full regulatory scheme into consideration. (*People* v. *Simon, supra*, 9 Cal.4th at p. 509.) It disapproved *Johnson* to the extent that it is inconsistent with *Simon*. (*People* v. *Simon, supra*, 9 Cal.4th at p. 522, fn. 18.)

[11]The trial court further instructed, as requested by the People, that if a later act of appellant made a former statement untrue, appellant could be found in violation of section 25401. This

statements to Cole which were similar to statements set out in the printed materials provided by Panda. Given that the prosecution was unaware of its burden to prove the element of scienter, and that the trial court prevented appellant from fully eliciting evidence on this issue, instructing the jury that such evidence was irrelevant, the conviction on this count must be reversed.

To provide guidance on retrial, we address appellant's contention that the trial court improperly refused to instruct the jury pursuant to CALJIC No. 4.35 regarding mistake of fact with respect to the charge that he used false statements in the sale of a security in violation of section 25401.[12]

The trial court must instruct on general principles of law relevant to the issues raised by the evidence. (*People* v. *Kimble* (1988) 44 Cal.3d 480, 503 [244 Cal.Rptr. 148, 749 P.2d 803]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on another ground in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Laskiewicz* (1986) 176 Cal.App.3d 1254, 1257 [222 Cal.Rptr. 686].) Because under *Simon* scienter is an element of this offense and must be proved by the prosecution, CALJIC No. 4.35 may become relevant if appellant invokes the defense of mistake of fact in his defense upon retrial.

*Section 25110*

■ Appellant contends that the trial court erred in excluding evidence whether he intended to sell an unqualified, unexempt security, as prohibited in section 25110. The court in *Simon* did not address the issue of scienter in connection with this section, as it did with regard to section 25401. Rather, the reversal of Simon's section 25110 convictions rested on the failure of the trial court to instruct on the burden of proof relating to the issue of exemptions. (*People* v. *Simon, supra,* 9 Cal.4th at pp. 499-506.)

As pertinent, section 25110 provides: "It is unlawful for any person to offer or sell in this state any security in an issuer transaction . . . , whether or not by or through underwriters, unless such sale has been qualified . . . or unless such security or transaction is exempted. . . ." Section 25540 incorporates the element of "willfulness" into the concept of criminal liability for

---

instruction was based on *People* v. *Johnson, supra,* 213 Cal.App.3d 1369, which *Simon* expressly disapproves.

[12]CALJIC No. 4.35 reads: "An act committed or an omission made in ignorance or by reason of a mistake of fact which disproves any criminal intent is not a crime. [¶] Thus a person is not guilty of a crime if [he] [she] commits an act or omits to act under an honest [and reasonable] belief in the existence of certain facts and circumstances which, if true, would make such act or omission lawful."

violation of section 25110, just as it does for violation of section 25401, discussed in *Simon.*

The issue of whether the term "willfulness" incorporates a concept of good faith in connection with section 25110 was addressed in *People* v. *Clem* (1974) 39 Cal.App.3d 539 [114 Cal.Rptr. 359]. The persons charged in *Clem* were originators of limited partnerships and of the financing scheme utilized to raise money, as in *Simon.* As such, they were directly responsible as issuers of the offerings and were charged with strict criminal liability. The court concluded that ". . . the Legislature intended section 25540 to preserve strict criminal liability for violations of the Corporate Securities Law." (*People* v. *Clem, supra,* 39 Cal.App.3d at p. 542.) As to the term "willfully," it held: " 'all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing. Proof of evil motive or intent to violate the law, or knowledge that the law was being violated, is not required.' " (*Id.* at p. 542.) It concluded: ". . . except as provided by section 25700 [not pertinent here] advice of counsel or other evidence of good faith is not a defense to a charge of dealing in unqualified securities." (*Id.* at pp. 542-543, fn. omitted.)

After *Simon,* we must question the broad statement in *Clem* which concludes that "the Legislature intended section 25440 to preserve strict criminal liability for violations of the Corporate Securities Law." In *Simon,* as previously noted, the Supreme Court held that section 25440, as applied to section 25401, did not provide for strict liability. This was after review of the legislative scheme adopting section 25401. Because section 25440 applies to both sections 25401 and 25110, we must analyze the reasoning in *Simon* to determine its applicability to violations of section 25110.

First, as we previously noted, the Supreme Court reversed Simon's convictions for violation of section 25110 on the basis of instructional error and not, as it did for his convictions under section 25401, on the basis of scienter. It may well be that the court determined that the issue of scienter was not before it with regard to section 25110. In footnote 13, the court made the following plea to the Legislature: "We encourage the Legislature to clarify which of the criminal violations of the Corporate Securities Law of 1968 that are punishable under either subdivision (a) [including section 25110] or (b) of section 25540 are strict liability offenses and what mental states are elements of those which require scienter." (*People* v. *Simon, supra,* 9 Cal.4th at pp. 509-510.)

In *Simon,* the court determined that section 25401 was adopted at the same time as section 25501, which set forth the civil liability for violation of

section 25401. It noted that section 25501 allows the purchaser of the security to recover damages against the person from whom the securities were purchased " '*unless the defendant proves . . . that the defendant exercised reasonable care and did not know (or if he exercised reasonable care would not have known)* of the untruth or omission. . . .' " (*People* v. *Simon, supra,* 9 Cal.4th at p. 516, italics in original.) The court also noted the magnitude of the potential criminal penalties available under section 25540: up to five years in state prison and a fine of up to $10 million.[13]

In contrast to section 25501, section 25503,[14] the statute providing for recovery of damages in a civil action for violation of section 25110, does not

---

[13]Section 25540, as amended in 1993 to increase the penalties, now reads: "(a) Except as provided for in subdivision (b), any person who willfully violates any provision of this division, or who willfully violates any rule or order under this division, shall upon conviction be fined not more than one million dollars ($1,000,000), or imprisoned in the state prison, or in a county jail for not more than one year, or be punished by both such fine and imprisonment; but no person may be imprisoned for the violation of any rule or order if he or she proves that he or she had no knowledge of the rule or order. [¶] (b) Any person who willfully violates Section 25400, 25401, or 25402 or who willfully violates any rule or order under this division adopted pursuant to those provisions, shall upon conviction be fined not more than ten million dollars ($10,000,000), or imprisoned in the state prison for two, three, or five years, or be punished by both such fine and imprisonment."

[14]Section 25503 states: "Any person who violates Section 25110, 25130 or 25133, or a condition of qualification under Chapter 2 (commencing with Section 25110) of this part, imposed pursuant to Section 25141, or an order suspending trading issued pursuant to Section 25219, shall be liable to any person acquiring from him the security sold in violation of such section, who may sue to recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security, or for damages, if he no longer owns the security, or if the consideration given for the security is not capable of being returned. Damages, if the plaintiff no longer owns the security, shall be equal to the difference between (a) his purchase price plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received therefrom by the plaintiff. [¶] Damages, if the consideration given for the security is not capable of being returned, shall be equal to the value of that consideration plus interest at the legal rate from the date of purchase, provided the security is tendered; and if the plaintiff no longer owns the security, damages in such case shall be equal to the difference between (a) the value of the consideration given for the security plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received therefrom by the plaintiff. Any person who violates Section 25120 or a condition of qualification under Chapter 3 (commencing with Section 25120) of this part imposed pursuant to Section 25141, shall be liable to any person acquiring from him the security sold in violation of such section who may sue to recover the difference between (a) the value of the consideration received by the seller and (b) the value of the security at the time it was received by the buyer, with interest thereon at the legal rate from the date of purchase. Any person on whose behalf an offering is made and any underwriter of the offering, whether on a best efforts or a firm commitment basis, shall be jointly and severally liable under this section, but in no event shall any underwriter (unless such underwriter shall have knowingly received from the issuer for acting as an underwriter some benefit, directly or indirectly, in which all other underwriters similarly situated did not share in proportion to

contain a scienter element. Also, the magnitude of potential criminal penalties for violation of section 25110 is much less than for violation of section 25401; up to $1 million in fines and up to one year imprisonment.[15] Therefore, the rationale applied in *Simon* does not support a similar outcome with regard to section 25110.

Courts have long considered a violation of section 25110 to be a strict liability offense which has as its purpose the protection of the public. "[T]he main objective of the securities law is to protect the public against the imposition of insubstantial, unlawful and fraudulent stock and investment schemes [citations], and to promote full disclosure of all information that is necessary to make informed and intelligent investment decisions [citations]." (*People* v. *Park* (1978) 87 Cal.App.3d 550, 565 [151 Cal.Rptr. 146].)

The *Simon* court, in overruling *People* v. *Johnson*, *supra*, 213 Cal.App.3d 1369, and reaching its conclusion that violation of section 25401 requires scienter, relied in part on the critique of *People* v. *Johnson* by former Commissioner of Corporations Robert H. Volk and Professor Harold Marsh, Jr., described as having "major responsibility" for drafting the Corporate Securities Law of 1968. (*People* v. *Simon*, *supra*, 9 Cal.4th at pp. 513-514.) These commentators state: "Section 25540 was intended to impose criminal liability only for an *intentional* misstatement." (1 Marsh & Volk, Practice under the Cal. Securities Laws (rev. ed. 1994) § 14.13[1], p. 14-79.) In contrast, immediately after Marsh and Volk severely criticize the contrary statement of legislative intent hazarded by the *Johnson* court, they state that "[a] criminal violation of Corp. Code Section 25110 is considered a strict liability offense," citing, without comment, *People* v. *Feno* (1984) 154 Cal.App.3d 719, 725 [201 Cal.Rptr. 513], and *People* v. *Clem*, *supra*, 39 Cal.App.3d at pp. 541-543. (1 Marsh & Volk, *op. cit.*, *supra*, at p. 14-80 and fn. 10.)

We conclude that section 25110 does not include scienter as an element which must be proved to establish that a person who offers or sells an unregistered and unexempt security is in violation of the statute.

---

their respective interest in the underwriting) be liable in any suit or suits authorized under this section for damages in excess of the total price at which the securities underwritten by him and distributed to the public were offered to the public. Any tender specified in this section may be made at any time before entry of judgment. No person shall be liable under this section for violation of Section 25110, 25120 or 25130 if the sale of the security is qualified prior to the payment or receipt of any part of the consideration for the security sold, even though an offer to sell or a contract of sale may have been made or entered into without qualification."

[15]Prior to the 1993 amendment, the monetary amount for violations of section 25110 and 25401 was the same, $250,000. (See fn. 8, *ante*.)

*Jury Instructions*

██ Appellant contends that the court should have instructed on the definition of agency as contained in section 25003,[16] because "only issuers and agents of issuers (which include sellers) can be held strictly liable as direct sellers under sections 25401 and 25110 of the Corporations Code." In connection with this argument, appellant cites the cases of *People* v. *Clem, supra,* 39 Cal.App.3d 539, *People* v. *Baumgart* (1990) 218 Cal.App.3d 1207 [267 Cal.Rptr. 534], and *People* v. *Feno, supra,* 154 Cal.App.3d 719. He points out that in each of those cases, the persons charged were either the actual issuers (*Clem* and *Feno*) or an employee of the actual issuer (*Baumgart*). None of the cases discusses this specific issue and appellant cites no cases on point. Furthermore, neither of the sections is so limited.

A 1972 amendment to section 25110 suggests that construction of the statute as maintained by appellant is contrary to the intent of the Legislature. When the statute was originally drafted it read: "It is unlawful for any *issuer* to offer or sell in this state any security *issued by it.* . . ." (Italics added.) In 1972, the statute was amended, and it now reads: "It is unlawful for any *person* to offer or sell in this state any security *in an issuer transaction* . . . unless such sale has been qualified. . . ." (Historical Note, 25 West's Ann. Corp. Code (1977 ed.) § 25110, p. 85, italics added.) Before the 1972 amendment, appellant would have had a valid point with regard to section 25110. However, the amendment shifted the emphasis to whether there is an offer or sale of an unsecured or unexempt security by "any person . . . in an issuer transaction."

The trial court instructed with respect to section 25110 as follows: "Section 25110 makes it unlawful for any person to offer or sell a security in an issuer transaction without first having obtained a qualification of such security from the Commissioner of Corporations of the State of California, unless such security is exempted. [¶] In order to prove the commission of such crime, each of the following elements must be proved: [¶] 1. That a security was offered or sold in this state; [¶] 2. That such conduct was willful; and [¶] 3. That at the time the security was offered or sold, such offer or sale had not been qualified with the Commissioner of Corporations of the State of California."

---

[16]Section 25003 provides as pertinent: " '*Agent' means any individual,* other than a broker-dealer or a partner of a licensed broker-dealer, who represents a broker-dealer or *who for compensation represents an issuer in effecting or attempting to effect purchases or sales of securities in this state.*" (Italics added.)

The court granted appellant's request for instructions defining "sale" and "offer,"[17] as well as "issuer" and "issuer transaction."[18] Appellant also requested and received an instruction which stated: "The fact that a person encourages a transaction that results in a sale does not necessarily make that person a seller."

These instructions properly addressed the issues raised pertaining to a violation of section 25110.

Section 25401 reads, as pertinent: "It is unlawful for any *person* to offer or sell a security. . . ." (Italics added.) Again, there is no requirement that the person who does the selling be an "issuer" or agent of an "issuer." Also, section 25540, which sets out the penalties for violation of each of these statutes, uses the word "person" and has no reference directly or indirectly to the term "issuer" or agent of an "issuer."

We conclude that an instruction on agency would have been surplusage and could have confused the jury.

■ Finally, appellant contends that the trial court erred in refusing to instruct on aiding and abetting with respect to both counts. He argues as follows: "Mr. Corey's liability should have been determined by the application of the principles of aiding and abetting, since he was not an *issuer* or *an agent of the issuer*. Following *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], aiding and abetting is a general intent theory of liability and a defendant may not be found criminally liable unless he had knowledge of the unlawful purpose and acted in furtherance of that purpose. Therefore, the evidence of Mr. Corey's mental state was essential in proving his guilt." (Italics added.)

With regard to proof of a violation of section 25401, *Simon* has now injected the element of scienter. Therefore, appellant's argument is moot as to that section.

With regard to section 25110, the prosecutor tried appellant solely on the theory that he was a direct seller of an unregistered security. Appellant's

---

[17]" 'Sale' or 'sell' includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value. [¶] 'Sale' or 'sell' includes any exchange of securities and any change in the rights, preferences, privileges, or restrictions of or on outstanding securities. [¶] 'Offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or an interest in a security for value."

[18]"An 'Issuer' is any person or corporation who issues or proposes to issue any security. [¶] An 'Issuer Transaction' is a transaction done for the benefit of the issuer, and the consideration is paid directly to the issuer."

defense relied upon a theory that he was not a seller, that his acts merely facilitated the transaction. Therefore, the concept of aiding and abetting was not relevant to the issues in the case and there was no need to instruct on it.

## DISPOSITION

The judgment of conviction as to section 25401 is reversed and the matter is remanded for retrial. Otherwise, the judgment is affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied June 23, 1995.